UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

**This Document Relates to:**

ATS ACTIONS

07-60821-CIV-MARRA (Carrizosa)
08-80421-CIV-MARRA (N.J. Action) (Does 1-11)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795)
08-80480-CIV-MARRA (*Manjarres*)
08-80508-CIV-MARRA (Valencia)
10-60573-CIV-MARRA (Fla. Action) (Montes)
17-80535-CIV-MARRA (Ohio Action) (Montes)
18-80248-CIV-MARRA (N.J. Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795)
_____/

## ORDER ON DEFENDANT'S RULE 50 MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW (DE 3792)

THIS CAUSE is before the Court on Defendant Chiquita's Rule 50 Motion for Partial Judgment as a Matter of Law as to Plaintiffs' claims under Article 2356 of the Colombian Civil Code, claims which seek to hold Defendant liable for allegedly conducting "hazardous activities" ("motion") (DE 3792). The motion is ripe for review.[1] The Court has considered the pleadings and record and is otherwise advised in the premises.[2] The Court assumes familiarity with the record for purposes of the motion.

---

[1] *See* DE 3821 (Plaintiff's Response in Opposition) and DE 3832 (Chiquita's Reply).

[2] For reasons and with background set forth in a concurrent order, the Court granted Plaintiffs' motion to amend their complaints to conform to the evidence attendant to the April 2024 trial, to include Article 2356 claims of certain Bellwether 1A Plaintiffs who had not specifically pled "Article 2356" or "hazardous activities." *See* DE 3903.

I. *Background*

A. <u>Defendant's Motion</u>

Defendant's threshold argument is that the "key question of whether Chiquita's activities were 'hazardous' for the purposes of liability under Article 2356 is a legal question for the Court to decide, not for the jury" (DE 3792 at 3). Even if the matter could be decided by a jury, Defendant argues, the Court should still enter judgment in its favor "because the undisputed evidence at trial shows that: (1) Chiquita did not engage in any 'hazardous' conduct giving rise to liability under the statute; and (2) third parties' actions—not Chiquita's—caused the purported harm" (*id.*).

Under Colombian law, hazardous activity must inherently involve an extraordinary hazard, risk, or danger, and present a "connatural and extraordinary risk" (*id.* at 4, citing Santos' expert report). Typical examples of these activities are maintaining a warehouse for flammable substances, an explosive factory, or operating a railway or an automobile. (*Id.*). Article 2356 specifically provides three examples of hazardous activities: "(1) recklessly firing a firearm; (2) removing the slabs of a ditch or pipe, or uncovering them in a street or road, without the necessary precautions to prevent those who pass there by day or night from falling in; and (3) leaving an adequate or fountain, which crosses a road, in such a state as to cause harm to those who travel along the road" (*id.* at 3-5). In contrast, Defendant argues its payments to the AUC do not amount to a hazardous activity as a matter of law "because 'the transfer of money does not involve inherently any extraordinary danger'" (*id.* at 5, citing the opinion of Chiquita's expert, Jorge Santos Ballesteros ("Santos"), that "'the act of paying money or dealing with money does not constitute a hazardous activity' because 'the transfer of money does not involve

inherently any extraordinary danger' even if that money 'facilitate[s] the occurrence of criminal acts')."

Even assuming, *arguendo*, that the AUC payments were a hazardous activity, Defendant argues further that Plaintiffs' Article 2356 claims also fail as a matter of law because Plaintiffs have failed to prove a causal link between the payments and the alleged harm: It was the AUC, not Chiquita, which smuggled weapons and drugs into ports where Chiquita had a presence, and it was the AUC, not Chiquita, who killed any applicable decedent. Defendant cites trial testimony in support of these arguments. Thus, even under the applicable "but for" cause analysis, Defendant would be exonerated because the AUC's actions constitute an "extraneous cause [which] impedes the imputation of the cause of damage to the conduct" of Defendant, "'the supposed perpetrator'" (*id*. at 6-7, citing Plaintiffs' expert, Jaime Alberto Arrubla-Paucar ("Arrubla")).

### B. Plaintiffs' Response in Opposition

Plaintiffs assert in opposition that there is "abundant evidence that Chiquita engaged in 'hazardous' activities," including its "years-long funding of a terrorist organization involved in the widespread murder of innocents" (DE 3821 at 2). They cite trial evidence demonstrating "how these payments increased the AUC's capacity to carry out is brutal campaign of violence" (*id*. at 6, 11).

They also claim that Defendant's "motion does not contest that its facilitation of the AUC guns and drug shipments were hazardous activities, nor could it" (DE 3821 at 2). Funding the AUC and facilitating the AUC's gun and drug smuggling are "obviously hazardous acts," they argue (*id*. at 4). Plaintiffs also take issue with Defendant's use of the "but for" causation

3

analysis which it claims that the Court "has rejected over and over again" (*id*. at 2),[3] and they assert that Defendant "misstates the law by asserting that a 'hazardous' activity must involve an 'extraordinary' hazard or risk" (*id*. at 7).

In response to Defendant's "extraneous cause" defense negating any putative liability for hazardous activities, Plaintiffs point to the *Ocensa* case, in which the Colombian Supreme Court interpreted Article 2356 to impose liability on an oil pipeline operator for damages caused by FARC's terrorist attack on their pipeline. In that case, Plaintiffs argue, the pipeline operator's extraneous cause defense failed "because the guerilla attacks were foreseeable" (DE 3821 at 13, also citing June 5, 2024 trial transcript[4]).

Plaintiffs argue further that whether Chiquita's activities were hazardous is a fact question (*id.* at 3, citing the Arrubla report, and translation of Colombian Supreme Court of Justice Decision of October 25, 1999). Plaintiffs also cite *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1348 (11th Cir. 2007), a jury trial on a negligence claim under Alabama law, for its argument that juries decide questions of fact (*id*. at 3-4). In this case, Plaintiffs argue, there is "ample evidence, as discussed above [in its response], from which a rational jury could, as this jury did, conclude that providing funding and guns to a notoriously brutal terrorist organization

---

[3] Plaintiffs appear not to have provided an accurate trial record citation as to this putative "rejection" (DE 3821 at 11), and their reference to the Court's December 2022 order on summary judgment (*id*., citing DE 3238 at 77) discussed "but for causation" concepts "having no play" in the *secondary liability* context (DE 3238 at 76-77). Plaintiffs also do not appear to provide any citation in the record for its later proposition regarding "were [the Court] to now change its earlier decision and determine that whether Chiquita's conduct is a hazardous activity is a legal question" (*id*. at 4).

[4] Plaintiffs argue that the "extraneous cause" defense to hazardous activities under Colombian law is similar to the duress defense, and has three elements Defendant cannot meet: (1) it has to be unforseeable and unpredictable; (2) it has to be something external to defendants that they did not put themselves in the position of contributing to in some way; and (3) it has to be impossible for them to get out of it (DE 3821 at 13, citing (June 5, 2024 trial transcript) [DE 3800] at 6-7)).

4

that murdered thousands of people increased the risk to community members, and therefore is a hazardous activity (DE 3821 at 14).

### D. Defendant's Reply

In reply, Defendant's argue that Plaintiffs "clinging" to the jury verdict is illogical both because the law required that the Court evaluate the Article 2356 claim for itself, and the claim was only submitted to the jury out of an abundance of caution (DE 3832 at 2). They also argue that "it makes little sense that the phrase 'question of facts' in a Colombian Supreme Court case [Plaintiffs cite] would mean what it does in the United States, because there is no distinction of who determines questions of law or fact in Colombian courts," where there are no juries (*id*. at 3-4). Defendant also points out that "the very same case Plaintiffs rely on makes clear that 'the legislator has tacitly delegated to the judge' the determination of whether the activity is dangerous or not" (*id*. at 4).

Reiterating that "[t]here is nothing hazardous about making payments," Defendant points to cases where courts have felt it inappropriate to, e.g., "expand the scope of the strict liability doctrine to embrace the banking and financial issues presented," i.e., "recruiting known financial terrorists . . . and providing them with any service for which they are willing to pay" (DE 3832 at 5-6).

With respect to causation, Defendants argue that Plaintiffs "run away from their own expert's statements and the well-settled Colombian causation law," and note that "the Court never determined that federal common law applies to the causation element of the **Article 2356** claim and only did so with respect to the fault-based claim" (DE 3832 at 8). Defendants also note that in the case of the pipeline operator, it was the flammable gas in the pipeline which actually caused the damage, thus making the pipeline operator strictly liable for such damage. Here, there is no trial evidence that making payments is what actually caused any damage: third

5

parties' acts (i.e., the AUC's acts) actually caused the damage and therefore constitute the extraneous cause that exonerates Chiquita's strict liability (DE 3832 at 9).

Lastly, Plaintiffs' counsel admitted that their expert has said that extraneous cause is a defense to hazardous activities (*id*. at 10). If the Court had instructed the jury on extraneous causation, Defendants argue further, "no reasonable jury would have found Chiquita's activities were the adequate cause of any Plaintiff[']s harm. Further, every reasonable jury would have found that there was an extraneous cause by a 'victim or third party' negating any liability of Chiquita—i.e. some third party *other than Chiquita* killed each Plaintiff's decedent. That fact was conclusively established (and admitted by Plaintiffs) at trial" (*id*., citing trial transcript).

II.   *Legal Standard*

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 is subject to a *de novo* review, viewing the evidence in the light most favorable to the non-moving party. *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1242 (11th Cir. 2021) (citing *Howard v. Walgreen Co.*, 605 F.3d 1239, 1242 (11th Cir. 2010)). Rule 50 motions should be granted "only when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Id*. (quotation marks omitted). *See also Brown v. R.J. Reynolds Tobacco Co.*, 38 F.4th 1313, 1323 (11th Cir. 2022) (citations omitted; stating that review of a renewed motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) is *de novo*, applying the same standards as the district court).

III.   *Discussion*

Rule 50 provides:

(1) *In General.* If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

    (A) resolve the issue against the party; and

>  (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a). Here, Defendant moved for judgment as a matter of law prior to the jury verdict, and the Court deferred ruling (DE 3792, DE 3821 at 1 (citing DE 3880 at 4-12)). As such, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Consequently, the Court may (1) allow judgment on the verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b).

As an initial matter, the Court rejects Plaintiffs' argument that the determination of whether an activity is hazardous is a matter that the jury can decide, at the cost of -- they suggest -- excluding the Court's ability to decide the issue as a matter of law. This would frustrate the purpose of Rule 50, which on its face refers to a court's ability to "find[] that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 50(a)(1).

The imposition of strict liability "involves *a characterization of the defendant's activity or enterprise itself, and a decision as to whether he is free to conduct it at all without becoming subject to liability for the harm that ensues even though he has used all reasonable care. This calls for a decision of the court*; and it is no part of the province of the jury to decide whether an *industrial enterprise* upon which the community's prosperity might depend is *located in the wrong place* or whether such an activity as blasting is to be permitted without liability in the center of a large city." Restatement (Second) of Torts § 520 (1977) (Comment *l.*) (emphasis added; *see also Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So.2d 510, 512 (Fla. 3d DCA 1984) (citing Florida courts' adoption of earlier versions of Restatement

(Second) of Torts § 520)). It is thus well within the Court's purview to determine whether payments to the AUC, the only "activity" squarely tied to Defendant, is "hazardous."

The "pipeline case" both parties cite states that the determination of whether an activity is dangerous is one that "the [Colombian] legislator *has tacitly delegated to the judge*, since there is no definition of what is to be understood as dangerous activity, let alone a catalog of those considered as such, the judge must take into account all these topics,[5] so that caprice or mere subjectivism is not the predominant criterion at the time of classifying a particular activity within this category" (DE 3654-6 at 1 (emphasis added)); *cf.* DE 3821 at 10, citing pipeline case, and claiming that pipeline operator was found liable for FARC terrorist acts on its pipeline "because the [terrorist] attack should have been seen"). FARC was not an exonerating third party in the pipeline case because, the tribunal stated, it was certain that the *effects of an oil spill on the nearby population should have been foreseen* (DE 3654-6 at 127-28). Thus, the Court rejects Plaintiff's argument that "the guerrilla attacks" -- not the transportation of oil in the pipeline -- was the foreseeable risk which the tribunal said imposed liability on the pipeline operator.

The Court finds that Defendant's payments to the AUC did not constitute "hazardous activities" to the extent that making those payments imposes strict liability on Defendant as a matter of law pursuant to Article 2356 of the Colombian Civil Code. *See*, e.g., *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668-69 (S.D.N.Y. 2000) (citations omitted; noting that "[s]trict liability is typically applied to (often physically dangerous) activities such as

---

[5] I.e., "the activity's structure or in its behavior, with inert or moving things or rarely without the use of them, generates more probabilities of damage than an average human being can usually withstand and repel; it is that whose effects become uncontrollable, unpredictable, devastating due to the multiplication of energy and movement that it implies or is inherent to it, effects that are also uncertain due to its capacity for greater destruction" (DE 3654-6 at 1).

blasting and use of atomic energy" and finding it inappropriate to expand the scope of the strict liability doctrine to banking and financial issues) and *Kisner v. Bank of America, N.A.*, No. 11–04264–CV–S–DGK, 2012 WL 601239, at *6 (W.D. Mo. Feb. 23, 2012) (rejecting theory of strict liability that bank's lending practices were abnormally dangerous). In so finding, the Court notes that Plaintiffs' citation to the October 25, 1999 verdict from the Supreme Court of Justice Colombia (DE 3821 at 3) is also unpersuasive, particularly considering the full context of translation:

> But the hazardous nature of an activity cannot be left to the whim or will of the judicial authority. Rather, it must be subject to objective, non-absolute, criteria, bearing in mind 'the *very nature of things and the circumstances in which they are carried out* and … the behavior of the person carrying out or benefiting from that activity, in relation to precautions adopted to prevent the potentially hazardous thing from actually causing harm,' according to the guidelines proposed by a national author. *Thus hazard is a question of facts* that must be examined with the support of objective criteria such as those indicated, in each specific case, *unless it is in the presence of an anticipated legal characterization*.

(*Id*. (emphasis added), citing 2345-1 at 97). This Court's legal characterization is that payment of money by its nature alone is not, as a matter of law, a hazardous activity that would subject Defendant to strict liability.[6]

IV. *Conclusion*

Based on the foregoing, and the entire record, the Court finds that, as a matter of law, payment of money to the AUC is not itself a "hazardous activity" as that term has typically been interpreted. It is therefore

---

[6] Plaintiffs also selectively, and unpersuasively, cite the Arrubla declaration elsewhere (DE 3821 n.4, citing DE 2345-1,¶ 96) with reference to liability reverting to the person who carries out an activity which "may be seen as generating risks or hazards for the community," and therefore the person who carries out such activities will be held liable," omitting the ending clause "*in law or in fact*."

**ORDERED AND ADJUDGED** that the Court **GRANTS** Defendant Chiquita's Rule 50 Motion for Partial Judgment as a Matter of Law as to claims brought under Article 2356 of the Colombian Civil Code (**DE 3792**). The portions of the jury verdict (**DE 3811, Questions 5, 6 and 7**) in favor of Plaintiffs based upon Article 2356 claims are hereby vacated and set aside.

**DONE AND ORDERED** in Chambers, in West Palm Beach, Florida this 18th day of October, 2024.

KENNETH A. MARRA
United States District Judge

cc: All counsel of record