Case No. 24-13770-AA

# In the United States Court of Appeals for the Eleventh Circuit

_____

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*

_____

On Appeal from the United States District Court
for the Southern District of Florida
No. 08-md-01916
(The Honorable Kenneth A. Marra)

_____

## BRIEF FOR PLAINTIFFS-APPELLEES

_____

Agnieszka M. Fryszman
Nicholas J. Jacques
COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave., N.W.
Suite 800
Washington, DC 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

James K. Green
JAMES K. GREEN, P.A.
Flagler Center, Suite 306
501 South Flagler Drive
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Paul L. Hoffman
John C. Washington
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
200 Pier Ave., Suite 226
Hermosa Beach, CA 90254
Tel: 310-717-7373
Fax: 310-399-7040

John Scarola
Mariano Garcia
Victoria Mesa-Estrada
SEARCY DENNEY SCAROLA BARNHART &
SHIPLEY, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Tel: 561-686-6300
Fax: 561-383-9451

*Additional counsel listed on inside cover*

Marco Simons
LAW OFFICE OF MARCO B. SIMONS
6218 Georgia Ave NW, Ste 1 #594
Washington, DC 20011
Tel: 917-696-3304

William R. Scherer
CONRAD & SCHERER, LLP
614 South Federal Highway
Fort Lauderdale, FL 33301
Tel: 954-462-5500
Fax: 954-463-9244

Eric Hager
CONRAD & SCHERER, LLP
Edificio Officenter, Suite 304
Avenida Pampite S/N y Chimborazo -
Cumbayá
Quito, Ecuador
Tel: 954-622-0461
Fax: 954-463-9244

Richard L. Herz
Marissa Vahlsing
Wyatt Gjullin
Gabriela Valentin Diaz
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, #800
Washington, DC 20006
Tel: 202-466-5188
Fax: 202-466-5189

Jonathan C. Reiter
JONATHAN C. REITER LAW FIRM, PLLC
350 Fifth Avenue, Suite 6400
New York, NY 10118
Tel: 212-736-0979
Fax: 212-268-5297

William J. Wichman
411 NW 1st Ave., #703
Fort Lauderdale, FL 33301
Tel: 954-522-8999

Terrence Collingsworth
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue NE
Washington, DC 20002
Tel: 202-543-5811

***Counsel for Plaintiffs-Appellees***

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 27-1(a)(9), counsel for Plaintiffs-Appellees certifies that a list of interested persons, trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations (noted with stock symbol if publicly listed), that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, and other identifiable legal entities related to a party, known to Plaintiffs-Appellees, are as follows:

1.      Plaintiffs-Appellees:

Berdugo Lechuga, Lina Maria

Fontal Camargo, Juvenal Enrique

Molina Rivera, Nini Johana

Mora Lemus, Nancy

Munoz, Gloria Eugenia

Palencia Gomez, Victor

Rivera Vargas, Janeth

Sierra Soto, Mariela Isabel

Torres Torres, Ana Ofelia

Villa Correa, Luis Anibal

Villa Correa, Luz Marina

Villa Hoyos, Arelis

Villa Hoyos, Diana

Villa Maza, Leopoldo

Villa Quintero, Fabio

Villa Quintero, Norela

2.    Defendant-Appellant:

Chiquita Brands International, Inc.

3.    Additional interested parties are:

*Plaintiffs-Appellees have included persons previously identified by*
*Defendant-Appellant as having a financial interest in this litigation.*
*Plaintiffs do not have direct information as to whether these persons*
*continue to have such an interest.*

Abrams, Louis D.

Abreu Medina, Ligia

Adelman, Roger M.

Agrícola Bananera Santa Rita, S. de R. L.

Agrícola Longaví Limitada

Agroindustria Santa Rosa de Lima, S.A.

Alamo Land Company

Alexander, Lauren

Alsama, Ltd.

Altman, Hon. Roy K.

American Produce Company

Americana de Exportación S.A.

Arnold & Porter Kaye Scholer LLP

Arrubla Devis Asociados

Arvelo, José E.

ASD de Venezuela, S.A.

Associated Santa Maria Minerals B C Systems, Inc.

B C Systems, Inc.

Bach, Lucinda J.

Baer, Jr., Hon. Harold

Bandy, Kevin M.

Banta, Natalie M.

Barbush Development Corp.

Berman, Richard E.

Berman, Steve W.

Betz, Cynthia Stencel

Bienes Del Rio, S.A.

Blalack, K. Lee

Blank Rome LLP

Blue Fish Holdings Establishment Bower, Elizabeth

Boies Schiller & Flexner, LLP

Boyd, David R.

Brackman, Liza J.

Braunstein, Rachel L.

Bronson, Ardith M.

Brown, Benjamin D.

Browne, Maureen F.

Brundicorpi S.A.

Burman, John Michael

Burton, Preston

Cambs, Peter James

Cardenas, John Arturo

Carrillo, Arturo

Carrillo, Arturo

Carter, Melanie S.

Casey, Daniel Arthur

Castro, Natalia

Centro Global de Procesamiento Chiquita, S.R.L.

Charagres, Inc., S.A.

Chaves, Matthew Ronald

Chiquita (Canada) Inc.

Chiquita (Shanghai) Enterprise Management Consulting Co., Ltd.

Chiquita Banana Company B.V.

Chiquita Banana Ecuador CB Brands S.A.

Chiquita Brands

Chiquita Brands International Foundation

Chiquita Brands International Sàrl

Chiquita Brands L.L.C.

Chiquita Central Europe, s.r.o.

Chiquita Compagnie des Bananes

Chiquita Deutschland GmbH

Chiquita Finance Company Limited

Chiquita Food Innovation B.V.

Chiquita For Charities

Chiquita Fresh B.V.B.A.

Chiquita Fresh España, S.A.

Chiquita Fresh North America L.L.C.

Chiquita Fruit Bar (Belgium) BVBA

Chiquita Fruit Bar (Germany) GmbH

Chiquita Fruit Bar GmbH

Chiquita Frupac B.V.

Chiquita Guatemala, S.A.

Chiquita Hellas Anonimi Eteria Tropikon Ke Allon Frouton

Chiquita Holdings Limited

Chiquita Holdings SA

Chiquita Honduras Company Ltd.

Chiquita Hong Kong Limited

Chiquita International Services Group N.V.

Chiquita Italia, S.p.A.

Chiquita Logistic Services El Salvador Ltda.

Chiquita Logistic Services Guatemala, Limitada

Chiquita Logistic Services Honduras, S. de R.L.

Chiquita Melon Packers, Inc.

Chiquita Mexico, S. de R.L. de C.V.

Chiquita Nature and Community Foundation Chiquita Panama L.L.C.

Chiquita Nordic Oy

Chiquita Norway As

Chiquita Poland Spolka Z ograniczona odpowiedzialnoscia

Chiquita Portugal Venda E Comercializaçao De Fruta, Unipessoal

Chiquita Relief Fund - We Care Chiquita Tropical Fruit Company B.V.

Chiquita Shared Services

Chiquita Singapore Pte. Ltd.

Chiquita Slovakia, S.r.o.

Chiquita Sweden AB

Chiquita Tropical Fruit Company B.V.

Chiquita Tropical Ingredients, Sociedad Anónima

Chiquita UK Limited

Chiquita US Corporation

ChiquitaStore.com L.L.C.

Chiriqui Land Company

Chomsky, Judith Brown

CILPAC Establishment

Cioffi, Michael L.

Clark, Alison K.

Coast Citrus Distributors Holding Company

Cohen Millstein Sellers & Toll PLLC

Collingsworth, Terrence P.

Colombian Institute of International Law

Compañía Agrícola de Nipe, S.A.

Compañía Agrícola de Rio Tinto

Compañía Agrícola del Guayas

Compañía Agrícola e Industrial Ecuaplantation, S.A.

Compañía Agrícola Sancti-Spiritus, S.A.

Compañía Bananera Atlántica Limitada

Compañía Bananera Guatemateca Independinte, S.A.

Compañía Bananera La Ensenada, S. de R.L.

Compañía Bananera Los Laureles, S.A.

Compañía Bananera Monte Blanco, S.A.

Compañía Caronas, S.A.

Compañía Cubana de Navegación Costanera

Compañía Frutera América S.A.

Compañía La Cruz, S.A.

Compañía Mundimar, S.A.

Compañía Productos Agrícolas de Chiapas, S.A. de C.V.

Compañía Tropical de Seguros, S.A.

Conrad & Scherer, LLP

Costa Frut S.A.C.

Costa Rica Sociedad de Responsabilidad Limitada

Coughlin, Patrick J.

Covington & Burling LLP

Danone Chiquita Fruits

Dante, Frank A.

Davenport, Jonathan

Davies, Patrick

de Leon, John

Desarrollos Agroindustriales del Istmo, S.de R.L.

Diaz, Gabriela Valentin

DiCaprio, Anthony

Dimensional Fund Advisors LP

Djoukeng, Cyril

DLA Piper LLP (US)

Duraiswamy, Shankar

*In re: Chiquita Brands International Inc. et al*                                    No. 24-13770

Durango, Pastora

Dyer, Karen C.

EarthRights International

Enrique Fresh Express Incorporated

Exportadora Chiquita - Chile Ltda.

Exportadora de Frutas Frescas Ltda.

Financiera Agro-Exportaciones Limitada

Financiera Bananera Limitada

FMR LLC

Freeman, Emily R.

Freidheim, Cyrus

Fresh Express Incorporated

Fresh Express Vegetable LLC

Fresh Holding C.V.

Fresh International Corp.

Frevola, Albert L.

Friedman, Hon. Paul L.

Friedman, Todd Rapp

Frutas Elegantes, S. de R.L. de C.V.

Fryszman, Agnieszka M.

Fundación Para El Desarrollo de Comunidades Sostenibles en el Valle de

Sula

G & V Farms, LLC

G W F Management Services Ltd.

Garcia-Linares, Manuel Antonio

Garland, James

Gjullin, Wyatt

Goldman Sachs Asset Management

Golembe, Stephen J.

Gopal, Serena

Gravante, Jr., Nicholas A.

Graziano, MacKennan

Great White Fleet Corp.

Great White Fleet Liner Services Ltd.

Great White Fleet Ltd.

Green, James K.

Greenaway, Jr., Hon. Joseph A.

Greer, Alan Graham

Gunster Yoakley & Stewart, P.A.

Guralnick, Ronald S.

Hager, Eric J.

Hall, John

Harrison, Michelle

Heaton Holdings Ltd.

Heise, Mark Jurgen

Heli Abel Torrado & Associados

Hellerman, Eric

Hemisphere XII Investors Limited

Hernandez, Raul

Herz, Richard

Hochman, Ian K.

Hoffman, Paul L.

Hospital La Lima, S.A. de C.V.

Husgen, Jason

Ilara Holdings, Inc.

Inversiones Huemul Limitada

Istmo Holding LLC One

Istmo Holding LLC Two

Jacques, Nicholas J.

James K. Green, P.A.

Jones, Foster, Johnston & Stubbs, P.A.

Josefsberg, Robert C.

Karon, Daniel R.

Kearns, Julie A.

Keiser, Charles

King, William B.

Kistinger, Robert

Klein, Halie Sara

Korvick, Tony P.

Krakoff, David S

Krezalek, Martin S.

Kroeger, Leslie M.

La Ensenada Holding LLC One

La Ensenada Holding LLC Two

Lamb, Dianna Walsh

Landon, Robert Donald Wike

Law Firm of Jonathan C. Reiter

Law Offices of Chavez & De Leon, P.A.

Law Offices of Judith Brown Chomsky

Leon, Hon. Richard J.

Leopold, Theodore J.

Lindner, Keith E

Maletta, Jeffrey B

Marcus, Bradley A.

Markman, Ligia M.

Marra, Hon. Kenneth A.

Martinez, Jaclyn E.

Mattioli, Eli R.

McCawley, Sigrid S.

McGregor, Kristi Stahnke

McKenna, Rosemary

Metlitsky, Anton

Meyer, Robert J.

Mitchell, Douglass

Mosier, Mark W.

Mozabanana, Lda.

Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A.

Mrachek, Lorin Louis

Murphy, Melissa F.

Murray, Jr., John Brian T.

Neiman, Jeffrey A.

Olson, Robert

O'Neill, Patrick T.

Ordman, John

Orlacchio, Adam V.

Orr, Jason A.

Orrick, Herrington & Sutcliffe LLP

Padukone, Aseem

Parkinson, James T.

Parry, Ronald Richard

Polaszek, Christopher Stephen

Porter, Newton Patrick

Portnoi, Dimitri D.

Preheim, Elissa J.

Prías Cadavid Abogados Procesados IQF, S.A. de C.V.

Procesados IQF, S.A. de C.V.

Processed Fruit Ingredients, BVBA

Promotion et Developpement de la Culture Bananiere

Puerto Armuelles Fruit Co., Ltd.

Rapp, Cristopher

Rasco, Ramon Alvaro Reiter, Jonathan C. Reynolds, J Birt

Rivera Vargas, Janeth

Rodgers, Megan L.

Ronald Guralnick, P.A.

Rose, Alan B.

Santa Rita Holding LLC One

Santa Rita Holding LLC Two

Scarola, John

Scherer, William R.

Schonbrun Seplow Harris Hoffman & Zeldes LLP

Schultz, Meredith L.

Searcy Denney Scarola Barnhart & Shipley

Servicios Chiquita Chile Limitada

Servicios de Logistica Chiquita, S.A.

Servicios Logisticos Chiquita, S.R.L

Servicios Proem Limitada

Shropshire, Stephanie

Silbert, Earl

Simons, Marco Benjamin

Soler, Julio

Soto, Edward

Sperling, Jonathan

Spiers N.V.

Spiker, Mia W.

Sprague, Ashley M.

St. James Investments, Inc.

Stanton, Robert

Stern, Robert M.

Stewart, Thomas H.

Stoolman, Michael

Stubbs, Sidney

Taylor, Kiersten A.

Tela Railroad Company Ltd.

Thomas, William Todd

Three Sisters Holding LLC

Train, Magda M. Jimenez

TransFRESH Corporation

Tsacalis, William

UNIPO G.V., S.A.

United Fruit Transports S.A.

United Reefer Services S.A.

V.F. Transportation, L.L.C.

Vahlsing, Marissa

Vazquez, Hon. John Michael

Verdelli Farms, Inc.

Warshaw, Steven

Washington, John C.

Wayne, Charles B.

Western Commercial International Ltd.

Wichmann, William J.

Wilkins, Robert

Willkie Farr & Gallagher LLP

Winchester, Robin

Wolosky, Lee S.

Yanez, Anthony

Zack, Stephen N.

Zagar, Eric L.

## STATEMENT REGARDING ORAL ARGUMENT

Although the legal issues in this appeal are well-settled and would allow for summary affirmance of the district court's judgment, Plaintiffs agree with Chiquita that oral argument would assist the Court given the complexity of the record and procedural history.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF CITATIONS ............................................................................... iv

INTRODUCTION ........................................................................................1

STATEMENT OF THE CASE ........................................................................2

    I.    Relevant Facts ........................................................................2

        A.    The jury found eight of nine victims were killed by the
            AUC ..........................................................................2

        B.    The jury found Chiquita knowingly provided substantial
            assistance to the AUC ................................................4

        C.    The jury rejected Chiquita's duress defense .............................7

    II.    Relevant Procedural History .................................................8

        A.    Summary Judgment ........................................................8

        B.    The trial and the jury's verdict ........................................9

STANDARD OF REVIEW ...........................................................................10

SUMMARY OF ARGUMENT .......................................................................11

ARGUMENT ...........................................................................................13

    I. The district court's causation instruction was correct ................................13

        A.    The district court did not abuse its discretion in using
            forum law because the parties had not proved Colombian
            causation standards ................................................15

        B.    The district court's causation instruction correctly stated
            Florida law ........................................................19

1.  Florida law does not require "but-for" causation here ............................................................. 20

2.  Chiquita waived its argument that Florida law requires "but-for" causation ........................................... 27

C.  Colombian law does not require "but-for" causation .............. 28

D.  *Twitter* does not help Chiquita .................................... 30

E.  Chiquita is not entitled to judgment .......................... 35

II.  The district court did not err in precluding Chiquita from calling one of Plaintiffs' counsel to testify ........................ 37

III.  The admission of video-taped deposition testimony was within the district court's discretion ................................. 45

IV.  The district court did not abuse its discretion when it declined to reduce the jury's award .................................... 49

V.  The district court did not err by submitting the hazardous-activity claim to the jury .................................... 52

VI.  The jury's hazardous-activity finding is an alternative ground for affirmance ..................................................... 54

CONCLUSION ................................................................. 58

# <u>TABLE OF CITATIONS</u>

**Page(s)**

**Cases**

*Amazon Servs. LLC v. USDA*,
   109 F.4th 573 (D.C. Cir. 2024)...........................................................30

*In re: Amends. to Fla. Rs. of J. Admin, Fla. Rs. of Civ. Proc., & Fla.*
   *Rs. of Crim. Proc.-Standard Jury Instrs.*,
   2020 WL 1593030 (Fla. Mar. 5, 2020)...............................................24

*Anderson v. Brown Indus.*,
   614 F. App'x 415 (11th Cir. 2015)......................................................28

*Anderson v. WBMG-42*,
   253 F.3d 561 (11th Cir. 2001) ............................................................38

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*,
   585 U.S. 33 (2018)..............................................................................16

*ASEDAC v. Panama Canal Comm'n*,
   453 F.3d 1309 (11th Cir. 2006) ..........................................................47

*\*In re Avantel, S.A.*,
   343 F.3d 311 (5th Cir. 2003) ..............................................................16

*Banco de Credito Indus., S.A. v. Tesoreria Gen.*,
   990 F.2d 827 (5th Cir. 1993) ..............................................................15

*Banque Paribas v. Hamilton Indus. Int'l, Inc.*,
   767 F.2d 380 (7th Cir. 1985) ..............................................................17

*Bhatnagar v. Surrendra Overseas Ltd.*,
   52 F.3d 1220 (3d Cir. 1995) ...............................................................52

*Bhogaita v. Altamonte Heights Condo. Ass'n*,
   765 F.3d 1277 (11th Cir. 2014) ..........................................................32

*\*Boim v. Holy Land Found. for Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008) ........................................................18, 23

*Bratt v. Genovese*,
782 F. App'x 959 (11th Cir. 2019) .................................................................48

*Bugliotti v. Republic of Argentina*,
952 F.3d 410 (2d Cir. 2020) .........................................................................17

*Corley v. Long-Lewis*
965 F.3d 1222, 1235 (11th Cir. 2020) ...........................................................19

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
47 F.4th 1278 (11th Cir. 2022) ..........................................................9, 39, 48

*Cavic v. Grand Bahama Dev. Co.*,
701 F.2d 879 (11th Cir. 1983) .....................................................................16

*Cohen v. Philip Morris USA, Inc.*,
203 So.3d 942 (Fla. 4th DCA 2016).........................................................21, 26

*Colon v. Twitter, Inc.*,
14 F.4th 1213 (11th Cir. 2021) .........................................................22, 24, 25

*\*Cooper v. Meridian Yachts, Ltd.*,
575 F.3d 1151 (11th Cir. 2009) .................................................................15, 16

*Crawford v. ITW Food Equip. Grp., LLC*,
977 F.3d 1331 (11th Cir. 2020) ....................................................................48

*Direct Sales Co. v. United States*,
319 U.S. 703 (1943)....................................................................................35

*Dupree v. Younger*,
598 U.S. 729 (2023)....................................................................................36

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938)......................................................................................30

*Ermini v. Scott*,
937 F.3d 1329 (11th Cir. 2019) ....................................................................11

*Estelle v. McGuire*,
502 U.S. 62 (1991)......................................................................................26

*Farley v. Nationwide Mut. Ins. Co.*,
   197 F.3d 1322 (11th Cir. 1999) ..........................................................................28

*Ferrostaal, Inc. v. M/V Sea Phoenix*,
   447 F.3d 212 (3d Cir. 2006) ..............................................................................17

*Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United*
   *Bhd. of Carpenters & Joiners of Am.*,
   675 F.3d 1250 (11th Cir. 2012) ....................................................................10, 11

*Foster v. United States*,
   768 F.2d 1278 (11th Cir. 1985) ....................................................................51, 52

*Freedman v. magicJack Vocaltec Ltd.*,
   963 F.3d 1125 ......................................................................................................17

*Garcia v. Chiquita Brands Int'l, Inc.*,
   48 F.4th 1202 (11th Cir. 2022) ..........................................................................50

*Gibson v. Avis Rent-A-Car Sys.*,
   386 So.2d 520 (Fla. 1980) ......................................................................21, 22, 23

*Gray v. Adams Grading & Trucking, Inc.*,
   956 So.2d 505 (Fla. 1st DCA. 2007) ..................................................................25

*Hadley v. Terwilleger*,
   873 So.2d 378 (Fla. 5th DCA 2004).....................................................................25

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983)......................................................................31, 32

*Hamm v. Powell*,
   874 F.2d 766 (11th Cir. 1989) ....................................................................53, 54

*Harris v. Kellogg, Brown & Root Servs.*,
   796 F.Supp.2d 642 (W.D. Pa. 2011)...................................................................19

*Hart v. Stern*,
   824 So.2d 927 (Fla. 5th DCA 2002)............................................................21, 25

*Heath v. Suzuki Motor Corp.*,
   126 F.3d 1391 (11th Cir. 1997) ........................................................................10

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)................................................................................56

*K-Mart Enters. of Fla., Inc. v. Keller*,
    439 So.2d 283 (Fla. 3d DCA 1983).....................................................26

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)......................................................................30, 31

*Leader Glob. Sols. LLC v. Yankelewitz*,
    762 F. App'x 629 (11th Cir. 2019)......................................................16

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) .................................................................44

*Logan v. Morgan, Lewis & Bockius LLP*,
    350 So.3d 404 (Fla. 2d DCA 2022).....................................................20

*Mamani v. Sanchez Bustamante*,
    968 F.3d 1216 (11th Cir. 2020) .....................................................15, 16

*McCain v. Fla. Power Corp.*,
    593 So.2d 500 (Fla. 1992) ..................................................................21

*McDaniel v. Petroleum Helicopters, Inc.*,
    455 F.2d 137 (5th Cir. 1972) ..............................................................52

*McGee v. Arkel Int'l, LLC*,
    671 F.3d 539 (5th Cir. 2012) ..............................................................15

*Moore v. Appliance Direct, Inc.*,
    708 F.3d 1233 (11th Cir. 2013) ..........................................................11

*Mut. Serv. Ins. Co. v. Frit Indus., Inc.*,
    358 F.3d 1312 (11th Cir. 2004) .....................................................15, 16

*U.S. ex rel. Osheroff v. Humana Inc.*,
    776 F.3d 805 (11th Cir. 2015) ............................................................28

*Philip Morris USA, Inc. v. Tullo*,
    121 So.3d 595 (Fla. 4th DCA 2013)....................................................21

vii

*Piamba Cortes v. Am. Airlines*,
  177 F.3d 1272 (11th Cir. 1999) ...............................................49, 51, 52

*Riley v. Tesla, Inc.*,
  No. 22-12515, 2025 WL 881387 (11th Cir. Mar. 21, 2025) .......................25, 26

*Ruiz v. Tenet Hialeah Healthsystem, Inc.*,
  260 So.3d 977 (Fla. 2018) ...............................................21, 22

*Samples v. Atlanta*,
  916 F.2d 1548 (11th Cir. 1990) ...........................................34

*Sanders v. Am. Body Armor & Equip., Inc.*,
  652 So.2d 883 (Fla. 1st DCA 1995) .........................................21, 23

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) ...........................................47

*SEC v. Dunlap*,
  253 F.3d 768 (4th Cir. 2001) ...........................................17

*In re Skat Tax Refund Scheme Litig.*,
  356 F.Supp.3d 300 (S.D.N.Y. 2019) .........................................15, 16

*Smith & Wesson Brands, Inc. v. Estados Unidas Mexicanos*,
  No. 23-1141 (U.S. June 5, 2025) ...........................................34, 35

*Stahl v. Metropolitan Dade County*,
  438 So.2d 14 (Fla. 3d DCA 1983)...................................20, 21, 22, 25

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*,
  904 F.3d 1197 (11th Cir. 2018) ...........................................18

*Therrell v. Ga. Marble Holdings Corp.*,
  960 F.2d 1555 (11th Cir. 1992) ...........................................53

*Tran v. Toyota Motor Corp.*,
  420 F.3d 1310 (11th Cir. 2005) ...........................................10

*Twitter v. Taamneh*,
  598 U.S. 471 (2023)............................................ 18, 30, 31, 32, 34, 35

*Twohy v. First Nat. Bank of Chicago*,
   758 F.2d 1185 (7th Cir. 1985) ............................................................17

*United States v. Moore*,
   525 F.3d 1033 (11th Cir. 2008) ..........................................................28

*United States v. Saget*,
   991 F.2d 702 (11th Cir. 1993) ......................................................45, 46

*United States v. Alvarez*,
   837 F.2d 1024 (11th Cir. 1988) ..........................................................47

*United States v. Ashman*,
   979 F.2d 469 (7th Cir. 1992) ..............................................................41

*United States v. Fowler*,
   605 F.2d 181 (5th Cir. 1979) ..............................................................46

*United States v. Lebowitz*,
   676 F.3d 1000 (11th Cir. 2012) ..........................................................43

*United States v. Oudovenko*,
   No. 00-cr-1014, 2001 WL 253027 (E.D.N.Y. Mar. 7, 2001) ...........................47

*United States v. Roberson*,
   897 F.2d 1092 (11th Cir. 1990) ....................................................41, 43

*United States v. Roy*,
   855 F.3d 1133 (11th Cir. 2017) ....................................................52, 53

*United States v. Watson*,
   952 F.2d 982 (8th Cir. 1991) ..............................................................41

*United States v. White*,
   2023 WL 9016456 (11th Cir. Dec. 29, 2023)........................................30

*Universe Sales Co. v. Silver Castle, Ltd.*,
   182 F.3d 1036 (9th Cir. 1999) ............................................................17

*Whitney v. R.J. Reynolds Tobacco Co.*,
   157 So.3d 309 (Fla. 1st DCA 2014) ..............................................21, 25

*Windsor v. Eaves*,
    614 F. App'x 406 (11th Cir. 2015) ........................................................53

*Yavuz v. 61 MM, Ltd.*,
    465 F.3d 418 (10th Cir. 2006) ............................................................17

## Other Authorities

Fed. R. App. P. 28 ..................................................................................43

Fed. R. App. P. 32.1 ...............................................................................30

Fed. R. Civ. P. 8 .....................................................................................33

Fed. R. Civ. P. 61 ...................................................................................11

Fed. R. Crim. P. 15 .................................................................................47

Fed. R. Evid. 603 ...................................................................................46

Fed. R. Evid. 801 ...................................................................................44

## INTRODUCTION

After a six-week trial, a jury found that for over seven years, Chiquita provided knowing substantial assistance to the *Autodefensas Unidas de Colombia* (AUC), an illegal paramilitary organization that conducted a reign of terror in the banana-growing regions of Colombia. The jury also found that the AUC murdered eight of nine Plaintiffs' decedents. Ample evidence supported the jury's verdict. Indeed, Chiquita pled guilty to a federal crime for its support of the AUC, and it does not challenge the sufficiency of the evidence on any issue in this case.

Chiquita's excuse for supporting the AUC was that it paid under duress. The jury rejected this self-serving claim, understanding that Chiquita supplied money and other assistance to the AUC to preserve its profits and expand its operations, knowing its support of the AUC brought misery to the Plaintiffs and their communities.

Chiquita's main argument on appeal is that Chiquita's knowing, substantial assistance was not enough, and the district court should have required Plaintiffs to prove that Chiquita's financial and other support to the AUC was the "but-for" cause of Plaintiffs' decedents' deaths. After careful review, the court found both parties' submissions on Colombian law to be inadequate to determine the standards for causation in the secondary-liability context and so fashioned a causation instruction based on forum law, as it had discretion to do. The court's causation

1

instruction accurately reflected Florida law and was fully consistent with Colombian law. If anything, the court's instruction was more demanding on Plaintiffs than Colombian law.

None of Chiquita's other arguments provide any basis for disturbing the jury's verdict or the judgment below. The district court, familiar with every aspect of this case after supervising the litigation for 17 years, properly exercised its discretion on the array of complex issues that were raised and gave the parties a fair trial. The judgment should be affirmed.

## STATEMENT OF THE CASE

Because Chiquita does not challenge the sufficiency of the evidence, acknowledging that ample evidence supports the verdict, Plaintiffs present an abbreviated summary of the facts established at trial.

## I.    Relevant Facts

### A.    The jury found eight of nine victims were killed by the AUC

The jury found that Plaintiffs had proved "by a preponderance of the evidence that the AUC in fact killed" eight of the nine victims. Vol61App13882.

Plaintiffs relied on eyewitness testimony, AUC participant admissions, and expert testimony to prove that the AUC killed their decedents. For example, Plaintiff Luz Marina Villa Correa identified AUC commander "El Aleman" as the man who came to ask for forgiveness for having ordered her father's killing.

2

Vol42App9469:14-9470:2. Eyewitness Maria Ruiz saw an AUC commander,
Gilberto Camacho, take victim Carlos Palencia away on a motorcycle.
Vol5SuppApp1208-10. Carlos's father, Victor Palencia Gomez, personally knew
Camacho and confronted him, and Camacho admitted to killing his son.
Vol44App9974:16-9975:18, 9978:15-24. Eyewitnesses for other Plaintiffs
identified the killers as AUC members but did not know their names. *E.g.*,
Vol43App9815:13-18.

Plaintiffs' expert, Professor Oliver Kaplan, testified that he performed a
temporal and geographic analysis that evaluated paramilitary activity at the times
and locations of the killings. Vol46App10399:4-10408:23. For example, Professor
Kaplan demonstrated that paramilitaries, not opposing guerrillas, targeted civilians
in the victims' municipalities during the relevant period and that the vast majority
of armed-group murders were by the AUC. Vol46App10399:8-10488:5. Kaplan
also examined other corroborating evidence, including AUC targeting patterns,
methods of killing, press and government reports, and paramilitary confessions.
Vol46App10408:25-10417:24.

Professor Kaplan explained that he relied upon a wide range of reliable
sources, including field-work and interviews in Colombia, a Jesuit research center
database, data from the National Center for Historical Memory, and government
documents, among others. Vol46App10382:23-10385:6.

3

**B.    The jury found Chiquita knowingly provided substantial assistance to the AUC**

The jury heard testimony about the violence. Left-wing guerrillas, known as the FARC, were targeting wealthy foreigners for kidnapping and fighting a civil war against the government. Vol48App10878:23-10879:6, 10958:3-7; Vol62App14169 ¶3; Vol2SuppApp374:14-375:24. Ranchers, landowners, and banana-farm managers formed right-wing "self-defense" paramilitaries. Vol46App10386:1-11, 10388:1-10389:25; Vol62App14169 ¶3. These groups eventually became part of the AUC, an umbrella organization that sought to drive the FARC out of the banana zone. Vol46App10386:3-11, 10460:17-20; Vol5SuppApp1132-33. The AUC had a pro-business, pro-government ideology. Vol46App10434; Vol5SuppApp1125; Vol6SuppApp1258.

The jury learned that it was not unusual for Chiquita to operate in areas of civil unrest and that Chiquita operated in many countries, sometimes purchasing fruit and sometimes buying plantations. Vol41App9383:15-9390:6; Vol2SuppApp359:23-25. During the conflict period, including while it was paying and supporting the AUC, Chiquita expanded from owning zero plantations to 35, and from 100 employees to 4,000 in Colombia. Vol41App9383:15-9385:8; Vol2SuppApp359:5-11.

The AUC targeted villagers in areas believed to be sympathetic to the guerrillas, a strategy called "draining the sea." Vol46App10390:19-24;

4

Vol51App11707:5-23. Chiquita's corporate representative testified that Chiquita knew from the day Chiquita made its first payment that the AUC was causing terror in the banana zone and killing civilians. Vol2SuppApp371:11-15, 379:11-20, 398:24-399:11, 406:14-21; *see also* Vol51App11707:5-23. Chiquita also knew that the AUC was an illegal terrorist organization. Vol2SuppApp371:13-15; *see also* Vol62App14907, 14171-14183.

The jury heard evidence that Chiquita provided substantial assistance to the AUC. Chiquita provided not only steady cash payments over at least seven years but also access to its port, which enabled the AUC to export drugs and import weapons. Vol61App14056-59; Vol62App14060-62, 14171-83; Vol2SuppApp411:9-431:2; Vol5SuppApp1134.

**Chiquita provided seed money to the AUC**: The jury heard from Professor Kaplan about the impact of Chiquita's payments on the AUC's ability to grow and expand its lethal capabilities. Professor Kaplan explained that Chiquita's 1997 payments to the AUC covered roughly 40-to-50 percent of the salaries of AUC members in the banana region and that the AUC "was highly reliant on paying salaries" to recruit. Vol3SuppApp563:14-19, 563:23-564:5. Although Chiquita emphasized the AUC's drug trafficking, which Chiquita facilitated by allowing the AUC access to its port, the AUC blocs in the banana region received most of their funding from donations, not drug trafficking. Vol46App10473:12-17;

Vol62App14118-19 (60% of AUC commander Hasbún's funds contributed by banana guild; less than one percent from drug trafficking). Chiquita's corporate representative testified that Chiquita knew that the money Chiquita was paying to the AUC was being used to buy drugs and weapons. Vol2SuppApp389:22-390:19. Chiquita knew that the weapons would be used to kill civilians. *Id.*

**Access to Chiquita's port enabled the AUC to smuggle guns**: The jury heard evidence that shipments of guns were delivered through Chiquita's port and picked up by the AUC. Vol62App14061-62; Vol2SuppApp419:18-420:19, 424:23-426:10. Chiquita did not report the weapons transfer to Colombian authorities. Vol2SuppApp423:18-23. In addition, a Chiquita employee personally hand-delivered ammunition and grenades to the AUC. Vol61App13995, 14022-14025.

**Chiquita shared communications equipment with the AUC, reported troublesome employees, and provided logistical support**: Two former Chiquita employees testified about the close cooperation between Chiquita and the AUC. For example, Chiquita security had one communications channel to communicate with the authorities, and another for the AUC. Vol61App13999. Chiquita reported internal thefts to the AUC, which then held "meetings" with the workers. Vol61App14054-55. A Chiquita manager also gave the AUC a target list of persons to be killed or abducted. Vol61App14001-02.

Chiquita provided gasoline almost every day to AUC members for their vehicles. Vol61App13997-98; Vol62App14083. The AUC provided security for Chiquita manager Charles "Buck" Keiser's home at the request of Chiquita security staff. Vol61App13996; *see also* Vol62App14063.

Chiquita kept paying the AUC even after the AUC was designated a terrorist organization by the United States government and Chiquita's outside counsel repeatedly advised it to stop the payments. Vol62App14098, 14178, 14189-14193. Chiquita's risk consultant also testified that he "never recommended you pay." Vol53App11996:22-11997:4.

### C.    The jury rejected Chiquita's duress defense

Chiquita repeatedly tells this Court, just as it tried to convince the jury, that it was extorted. *E.g.*, AOB1. The jury disagreed. After weighing testimony from Chiquita's own witnesses, the jury found that Chiquita did not show it had made payments or provided port access under duress. Vol61App13886. Chiquita does not challenge the relevant jury instruction or evidentiary rulings on duress.

Chiquita's corporate representative testified that the AUC never caused any physical harm to Chiquita's facilities, its operations or its managerial employees, and that Chiquita could not identify any person who received a direct or specific threat from the AUC. Vol2SuppApp390:25-392:1, 392:24-394:3, 398:18-22;

7

Vol5SuppApp1109. When Chiquita interrupted its payments, it did not suffer any consequences from the AUC. Vol2SuppApp408:6-22.

## II.    Relevant Procedural History

Plaintiffs filed their initial complaints in 2007. The Judicial Panel on Multidistrict Litigation in 2008 transferred cases to the Southern District of Florida to be coordinated by Judge Kenneth Marra, who presided over this litigation for 17 years.

In 2012, the district court determined that Colombian law applied to Plaintiffs' claims. Vol5App1150; Vol1SuppApp37-39. Plaintiffs therefore proceeded under two Colombian Civil Code provisions: (1) Article 2341, general tort liability, and (2) Article 2356, liability for hazardous activity. Vol61App13864.

In April 2017, the court ordered the parties to select individual cases for bellwether trials. Vol1SuppApp129-34.

### A.    Summary Judgment

Chiquita in 2019 sought summary judgment of the initial bellwether cases. The district court initially granted Chiquita's motion, believing Plaintiffs' evidence of AUC responsibility for the deaths was insufficient or inadmissible. On appeal, this Court found some of the evidence the district court rejected to be admissible,

vacated summary judgment as to ten of the cases, and remanded for further proceedings. *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1340 (11th Cir. 2022).

On remand, the district court ruled that neither side had provided sufficient support for their respective interpretations of foreign law, Vol19App4371-72, and followed the well-settled rule that a court may use forum law to fill gaps in the parties' foreign-law submissions. Vol19App4373-74.

Ultimately, the court held that Chiquita would be liable if it knowingly "'substantially assisted' the AUC in carrying out its bloody rampage across the Colombian countryside resulting in the deaths of Plaintiffs' decedents." Vol19App4374. The court concluded there was sufficient record evidence of such assistance. *Id.*

### B.    The trial and the jury's verdict

Trial began in April 2024. The trial spanned 30 court days over six weeks, including four days of jury selection, an entire day of opening arguments, 21 days of testimony, a day-long charging conference, a day of closing arguments, and two days of jury instructions and deliberations. Vol3App637-655. The jury heard testimony from 58 witnesses and received 84 exhibits. *Id.*

The court submitted the case to the jury on two counts (Articles 2341 and 2356) for each Plaintiff. After deliberating for two days, the jury awarded a total of

$38.3 million in compensatory damages to the Plaintiffs in the eight prevailing cases and found one Plaintiff had not proven their decedent was murdered by the AUC. Vol61App13887-88.[1]

Following trial, the court granted Chiquita's motion for a directed verdict on Plaintiffs' Article 2356 claims. Vol65App14908. The court ruled that making payments to a designated terrorist group is not a hazardous activity as a matter of law. Vol65App14905-07. The court otherwise denied Chiquita's post-trial motions. Vol65App14913; Vol66App15085.

## STANDARD OF REVIEW

"District courts have broad authority over the management of trials." *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005). This includes broad discretion in instructing the jury "[s]o long as the jury instructions as a whole reflect pertinent substantive law." *Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1395 (11th Cir. 1997); *see also Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Bhd. of Carpenters & Joiners of Am.*, 675 F.3d 1250, 1259 (11th Cir. 2012).

Even where the district court is found to have abused its discretion, "[j]ury instructions are subject to harmless error review." *Fid. Interior Const.*, 675 F.3d at

---

[1] The tenth case was voluntarily dismissed during trial.

10

1259; *see also* Fed. R. Civ. P. 61. "The burden of proving that an error was not harmless rests with the party asserting it, who must establish that the error affected his substantial rights." *Ermini v. Scott*, 937 F.3d 1329, 1343 (11th Cir. 2019) (cleaned up).

Likewise, "[t]he district court has broad discretion to determine the admissibility of evidence" and this Court "will not disturb the [district] court's judgment absent a clear abuse of discretion." *Tran*, 420 F.3d at 1315 (quotation marks omitted). Even where there is a clear abuse of discretion, a party seeking reversal for an evidentiary error must satisfy harmless error review. *Ermini*, 937 F.3d at 1343. "If the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Id.* (cleaned up).

Finally, this Court reviews the denial of a motion for remittitur for abuse of discretion. *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013).

## SUMMARY OF ARGUMENT

The district court acted within its discretion to fashion jury instructions after the parties failed to adequately prove Colombian law on the causation standard for secondary liability. The court undertook a traditional choice-of-law analysis to fill the gap by borrowing basic principles of Florida law. There was no abuse of discretion in how it did so. Chiquita failed to show that Colombia would apply

"but-for" causation and itself submitted a Florida-law instruction that relied, as the court did, on "knowing substantial assistance." Vol25App5642.

Chiquita's remaining arguments are equally unavailing. For nearly a decade, Chiquita tried to poison Judge Marra's attitude toward Plaintiffs' claims with repeated assertions that a lawyer for one bellwether decedent, Terrence Collingsworth, made payments to AUC witnesses. At trial, Chiquita was permitted to air this issue, including by playing video-taped testimony and in closing argument. In this appeal, Chiquita claims that the court erred by refusing to allow Chiquita to also call attorney Collingsworth to testify before the jury. Judge Marra's careful balancing of the interests of all parties and the interest of justice was a textbook example of an experienced and knowledgeable judge exercising his discretion to protect all parties from undue prejudice.

Similarly, the court acted well within its discretion in admitting the videotaped deposition testimony of witnesses Bello and Nuñez despite Chiquita's objection regarding the form of the oath, which clearly satisfied Federal Rule of Evidence 603.

The court did not abuse its discretion when it refused to reduce the jury's award because Colombian law does not cap non-economic damages and because, under this Circuit's precedent, any purported caps in Colombian law would not apply to Chiquita.

12

Finally, there was no prejudice to Chiquita in submitting Plaintiffs' hazardous-activity claim to the jury as the jury is presumed to have followed the trial court's separate instructions on each claim. Regardless, the jury's verdict on this claim should not have been overturned. Chiquita's substantial assistance to the terror campaign of the AUC qualifies as a hazardous activity under Colombian law.

Having presided over these cases for 17 years, Judge Marra was as familiar with the issues as a trial judge could be. He exercised his discretion on a myriad of issues and acted fairly to both sides. Chiquita received a fair trial and the jury's verdict should be affirmed.

## ARGUMENT

### I. The district court's causation instruction was correct

After considering 18 pre-trial expert reports from five Colombian law experts, two rounds of alternative proposed jury instructions from the parties, and several days of oral argument pre-trial and at the charging conference, the district court carefully crafted instructions to enable the jury to apply Colombian law to Plaintiffs' claims. Colombia is a civil-law country that does not utilize juries or prepare pattern instructions. The governing law is a general tort statute that broadly imposes liability for "a crime or fault" that caused damage. Vol17App3711, 3821-

13

23. Plaintiffs' claims arose out of payments and other support Chiquita provided to the AUC, the illegal paramilitary organization responsible for the murders of Plaintiffs' decedents.

The court properly rejected Chiquita's proposed causation instruction. Chiquita failed to show that Colombia would utilize a "but-for" test in cases alleging secondary liability. After careful review, the court found both parties' Colombian law submissions to be insufficient. The court then exercised its discretion to use forum law to fill the gaps left by the parties' experts. The court looked to Florida law and analogous federal cases to fashion the instructions.

The court first required the jury to determine whether Chiquita "acted in accordance with the 'reasonable businessperson' standard of care," consistent with Colombian law. Vol61App13867. If the jury found that Chiquita was a reasonable businessperson, then the jury was directed to find that Chiquita was not at fault. *Id*.

If the jury found that Chiquita did not act reasonably, the court required Plaintiffs to show that Chiquita "knowingly provided substantial assistance to the AUC." *Id.* The court explained that in this context "contributions are knowingly made when the contributor understands the mission of the organization to which it contributes." *Id*. The court also instructed the jury to determine whether Chiquita's support for the AUC created a foreseeable risk of harm to each Plaintiffs' relative: "did Chiquita's assistance substantially increase the risk of terrorist acts by the

14

AUC and the probability that the Plaintiff's relative would be a victim." *Id*. The

court then instructed the jury to consider Chiquita's duress defense.

Vol61App13868.

### A. The district court did not abuse its discretion in using forum law because the parties had not proved Colombian causation standards

The party seeking application of foreign law has the burden of proving the

relevant legal principles. *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 546 (5th Cir.

2012); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir.

2004).

It is well-settled that if the parties fail to adequately prove foreign law, or if

the law is unsettled, the court will decide the case in accordance with the law of the

forum. *Mut. Serv. Ins. Co.*, 358 F.3d at 1321 (citing Restatement (Second) of

Conflicts of Laws § 136 cmt. h); *see also Cooper v. Meridian Yachts, Ltd.*, 575

F.3d 1151, 1165-66 (11th Cir. 2009) ("we follow the usual rule" and turn to forum

law); *Banco de Credito Indus., S.A. v. Tesoreria Gen.*, 990 F.2d 827, 836 (5th Cir.

1993) ("When the parties have failed to conclusively establish foreign law, a court

is entitled to look to its own forum's law in order to fill in any gaps"). The court "is

not required to conduct its own research." *Mut. Serv. Ins. Co.*, 358 F.3d at 1321;

*see also Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1246 (11th Cir. 2020).

That is especially true when foreign sources are difficult to research and not in

English. *Mut. Serv. Ins. Co.*, 358 F.3d at 1321; *see also, e.g.*, *In re Skat Tax Refund Scheme Litig.*, 356 F.Supp.3d 300, 316 (S.D.N.Y. 2019) (foreign language "not among the Court's abilities"). Nor is the court required to "insist on a complete presentation by counsel." *Mamani*, 968 F.3d at 1246.

"In determining whether a party has adequately proved the substance of foreign law, the district court is given wide latitude." *In re Avantel, S.A.*, 343 F.3d 311, 321-22 (5th Cir. 2003) (citing *Seguros Tepeyac, S. A., Compania Mexicana de Seguros Generales v. Bostrom,* 347 F.2d 168, 174-75 n.3 (5th Cir. 1965)). The court is "not bound by the parties' experts' opinions about the foreign law." *Leader Glob. Sols. LLC v. Yankelewitz*, 762 F. App'x 629, 632 n.1 (11th Cir. 2019) (citing *Cooper*, 575 F.3d at 1163 (finding affidavit incomplete)).[2]

Indeed, when both parties fail to prove foreign law, "the forum may say that the parties have acquiesced in the application of the local law of the forum." *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 882 (11th Cir. 1983) (quoting

---

[2] Chiquita misconstrues *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.,* 585 U.S. 33, 36 (2018). There, the Supreme Court held that a court is not bound to accord conclusive effect to a foreign government's submission on the meaning of its own law. The Supreme Court did not hold that a district court is required to conduct a "comprehensive" analysis. AOB31. Defendants in that case sought dismissal of a price-fixing suit on act of state grounds because, they alleged, Chinese law set fixed prices. The district court denied the motion to dismiss after finding the record regarding the legal requirements "too ambiguous."

Restatement (Second) of Conflicts § 136 cmt. h). Courts likewise hold that under

such circumstances, it is permissible to conclude that the foreign law is the same as

forum law. *Freedman v. magicJack Vocaltec Ltd*., 963 F.3d 1125, 1136 (11th Cir.

2020); *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 218 (3d Cir. 2006).[3]

Here, the court extensively discussed the parties' Colombian law

submissions on causation, Vol19App4371-73, before concluding that "neither side

has illuminated the substantive contours of Colombian law on this precise issue,"

"namely how does the element of 'causation' express in the *secondary liability*

context under Colombian law?" Vol19App4372-73. The district court observed

that "but-for" causation concepts "logically have no play" in the secondary liability

context: "Under federal and state common law doctrine under United States

jurisprudence, causation is defined differently in the secondary liability context."

---

[3] Chiquita cites *no* cases rejecting the application of forum law where
foreign law has been insufficiently proven. It cites cases where an appellate court
remanded because a district court had not decided the relevant foreign-law
question, *see Bugliotti v. Republic of Argentina*, 952 F.3d 410, 414 (2d Cir. 2020);
*Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 431 (10th Cir. 2006); *Banque Paribas v.
Hamilton Indus. Int'l, Inc.*, 767 F.2d 380, 385-86 (7th Cir. 1985); *SEC v. Dunlap*,
253 F.3d 768, 777 (4th Cir. 2001); got the content of foreign law wrong, *see
Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999); or
held that the plaintiff's failure to establish foreign law does not justify dismissing
his claim, without further inquiry, *see Twohy v. First Nat. Bank of Chicago*, 758
F.2d 1185, 1189, 1193 (7th Cir. 1985). None of these cases considered, let alone
rejected, gap-filling with forum law. Even if they had, these out-of-circuit holdings
would conflict with the law of this Circuit.

*Id*. (citing *Doe v. Drummond,* 782 F.3d 576, 608 (11th Cir. 2015) and *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 692 (7th Cir. 2008)).

Because neither party sufficiently demonstrated Colombian law on causation in a secondary-liability context, the court held that it would assume – consistent with the black letter choice-of-law principles discussed above – that Colombian law was in accord with Florida law. Vol19App4374.

Chiquita argues that the district court ignored its supplemental declaration filed on the eve of trial.[4] But the court considered Chiquita's argument. Vol58App13155:25-13157:22 (Court: "I understand your points."). Chiquita's declaration did not fill the gap the court identified. It did not discuss the standards to be applied in secondary liability cases beyond stating that "assisting or contributing conduct" or "adequate or efficient causal contribution" must be established. Vol25App5696-97. Under the circumstances, the court reasonably declined to reconsider its prior ruling. *See Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*, 904 F.3d 1197, 1208 (11th Cir. 2018) ("[A] party waives its opportunity to rely on non-forum law where it fails to timely provide—typically in its complaint or the first motion or response when choice-of-law matters—the

---

[4] Chiquita moved for reconsideration after *Twitter v. Taamneh*, 598 U.S. 471 (2023), was decided, Vol20App4531-47, but offered no additional authority addressing the gap the court had identified. Instead, Chiquita waited over 14 months, until the eve of trial, to file its supplemental declaration.

sources of non-forum law on which it seeks to rely."); *see also Corley v. Long-Lewis*, Inc., 965 F.3d 1222, 1235 (11th Cir. 2020) (within court's discretion to refuse to reconsider summary judgment under new source of law); *Harris v. Kellogg, Brown & Root Servs.*, 796 F.Supp.2d 642, 670 (W.D. Pa. 2011).

### B.    The district court's causation instruction correctly stated Florida law

Because the parties had failed to adequately establish Colombian law, the district court had to determine the standard the jury should apply. Acting within its discretion, the court found that "knowing substantial assistance" was the most appropriate causation standard to connect the support Chiquita provided for the AUC to the deaths. In doing so, the court properly provided the jury with a causation standard that required the jury to find a substantial connection between Chiquita's actions and those deaths. This standard appropriately implemented Colombian causation principles in a manner also consistent with Florida law causation principles. The court was required to translate the Colombia civil-law system for the jury, and none of Chiquita's arguments are a basis to overturn the court's careful exercise of that discretion. The court properly applied forum law, which does not require "but-for" causation. Moreover, Chiquita waived its argument that Florida law requires "but-for" causation by itself proposing a Florida law instruction with a substantial-assistance standard.

19

### 1. Florida law does not require "but-for" causation here

The district court reasonably drew the applicable causation standard from Florida law. That standard requires substantial assistance, not but-for causation. Vol19App4374 (citing *Lesti v. Wells Fargo Bank, N.A.*, 960 F.Supp.2d 1311 (M.D. Fla. 2013)); *accord Logan v. Morgan, Lewis & Bockius LLP*, 350 So.3d 404, 410 n.2 (Fla. 2d DCA 2022) (Florida applies the knowing, substantial assistance standard in the Restatement (Second) of Torts § 876 (Am. L. Inst. 1979)). Chiquita does not argue otherwise. Rather, Chiquita points to ordinary negligence principles. But the instruction the court gave the jury properly reflects Florida negligence law.

Chiquita's arguments invoke two causation doctrines under Florida law – concurrent cause and intervening cause. The concurrent causes of Plaintiffs' injuries are the AUC's various funding sources (i.e., Chiquita's payments, the AUC's other patrons, and its drug revenue) that enabled the AUC to conduct its reign of terror. The intervening causes are the murders themselves.

Florida law on concurrent cause disproves Chiquita's argument that "Florida courts require plaintiffs to prove but-for causation in all negligence cases." AOB37. When a defendant's negligence combines with other concurrent factors to cause an injury, "the Florida courts have abandoned *sub silentio* the 'but for' test and have employed instead a 'substantial factor' test." *Stahl v. Metropolitan Dade*

20

*County*, 438 So.2d 14, 18 (Fla. 3d DCA 1983) (following W. Prosser, *Handbook of the Law of Torts* § 41 (4th ed. 1971)); *see also, e.g.*, *Philip Morris USA, Inc. v. Tullo*, 121 So.3d 595, 599 (Fla. 4th DCA 2013); *Hart v. Stern*, 824 So.2d 927, 931-32 (Fla. 5th DCA 2002); *Sanders v. Am. Body Armor & Equip., Inc.*, 652 So.2d 883, 884-85 (Fla. 1st DCA 1995); Dobbs' Law of Torts § 189 (2d ed. 2025 update). This test "does not require an act to be the exclusive or even the primary cause of an injury in order for that act to be considered the proximate cause of the injury: rather, it need only be a substantial cause of the injury." *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So.3d 977, 982 (Fla. 2018); *see also, e.g.*, *McCain v. Fla. Power Corp.*, 593 So.2d 500, 502 (Fla. 1992). A substantial cause of an injury is one that increased the plaintiff's risk of injury, though it does not need to have "doubled the risk of injury." *Cohen v. Philip Morris USA, Inc.*, 203 So.3d 942, 950 (Fla. 4th DCA 2016) (quoting *Whitney v. R.J. Reynolds Tobacco Co.*, 157 So.3d 309, 313 (Fla. 1st DCA 2014)). Whether a defendant's conduct "is such a substantial factor is for the jury to determine." *Stahl*, 438 So.2d at 19 (quoting *Loftin v. Wilson*, 67 So.2d 185, 191 (Fla. 1953)).

Additionally, under the intervening-cause doctrine, "one who is negligent is not absolved of liability when his conduct 'sets in motion' a chain of events resulting in injury to the plaintiff." *Gibson v. Avis Rent-A-Car Sys.*, 386 So.2d 520, 522 (Fla. 1980), *abrogated on other grounds by Askew v. Fla. Dep't of Child. &*

21

*Fams.*, 385 So.3d 1034 (Fla. 2024). "If an intervening cause is foreseeable the original negligent actor may still be held liable." *Id.* "Where a third party … has committed an intentional tort or criminal act causing the plaintiff's injuries, 'the proper question is whether that individual's conduct is so unusual, extraordinary, or bizarre (i.e., so unforeseeable) that the policy of the law will relieve the defendant of any liability for negligently creating the dangerous situation.'" *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (cleaned up) (quoting *Goldberg v. Fla. Power & Light Co.*, 899 So.2d 1105, 1116 (Fla. 2005)).

The record here contains evidence of both concurring and intervening causes – the AUC's other funding sources and its criminal acts, respectively. Accordingly, the but-for test does not apply under Florida law. *See Stahl*, 438 So.2d at 18. Rather, the district court properly instructed the jury in a manner that incorporated Florida principles on concurrent and intervening cause and that the court specifically tailored to the claims in this case. It asked the jury to determine whether Chiquita "provided substantial assistance to the AUC," and later rephrased the question as whether "Chiquita's assistance to the AUC was a substantial factor in the killing of any Plaintiff's relative." Vol61App13867-68. This is exactly what Florida law requires in concurring cause cases. *Ruiz*, 260 So.3d at 982; *Stahl*, 438 So.2d at 18. The court also instructed the jury that it must consider whether Chiquita's actions "create[d] a foreseeable risk of harm to others, including that

22

Plaintiff's relative," properly stating the question of whether Chiquita could be liable for the AUC's intervening criminal acts. *Gibson*, 386 So.2d at 522.

To determine this standard, the court looked for guidance from Judge Posner's influential opinion for the en banc Seventh Circuit in *Boim*, 549 F.3d at 685. It was not error to do so. *Boim* is factually analogous: the family members of a Hamas victim sued defendants whom they alleged financially supported Hamas. *Id.* at 687-88. It is also legally analogous. Though *Boim* specifically addressed material-support liability under the Antiterrorism Act, it identified the common-law tort principles that apply when, as here, "the primary liability is that of someone who aids someone else, so that functionally the primary violator is an aider and abettor." *Id.* at 692. *Boim* thus applied "general principles of tort law" ascertained from an expansive survey of common-law precedent, including Florida precedent. *Id.* at 692, 695-96 (citing concurrent cause discussion in *Sanders*, 652 So.2d at 884-85). The "general principles of tort law" applicable to tort claims against terrorism funders include the principle, familiar in Florida's jurisprudence, "that 'it is no defense for a person against whom negligence which causes damages is established, to prove that without fault on his part the same damage would have resulted from the negligent act of the other.'" *Id.* at 696 (quoting *Cook v. Minneapolis, St. Paul & Sault Ste. Marie Ry.*, 74 N.W. 561, 564 (Wis. 1898)). In short, *Boim* is consistent with Florida law, and the court was correct to rely on it.

23

*See Colon*, 14 F.4th at 1224 ("Florida does use the substantial factor/reasonable foreseeability standard for proximate cause, and some federal courts have employed a similar standard under the ATA." (internal citation omitted)).

Chiquita largely ignores these well-settled causation principles. Chiquita cites the Florida Pattern Jury Instructions, which it never asked the district court to follow. The Pattern Instructions are not authorized by the Florida Supreme Court. *See In re: Amends. to Fla. Rs. of J. Admin, Fla. Rs. of Civ. Proc., & Fla. Rs. of Crim. Proc.-Standard Jury Instrs.*, 2020 WL 1593030, at *1-2 (Fla. Mar. 5, 2020).[5] In any case, the district court's instructions and the pattern instructions are consistent. *See* Fla. Pattern Civ. Jury Instr. 401.12(b) (recommending instruction in concurring cause cases that defendant is liable if its "negligence contributes substantially to producing" plaintiff's injury); *id.* 401.12(c) (recommending instruction in intervening cause cases that defendant is liable if intervening "cause was itself reasonably foreseeable.").

The district court's decision not to use the "but-for" language in pattern instruction 401.12(a) was a proper exercise of its discretion in crafting the form of

---

[5] Although the Florida Supreme Court once authorized publication of the instructions, it expressed "no opinion on the correctness of the instructions," and in 2020, lamenting that "some wrongly believe that … the Court has ruled on the legal correctness of those instructions," it stopped authorizing the pattern instructions altogether. *In re: Amends.*, 2020 WL 1593030, at *1-2.

the instruction. Indeed, it would have been an error if the court had required but-for causation. As demonstrated above, Florida has "abandoned" but-for cause as the test in concurrent-cause cases. *Stahl*, 438 So.2d at 18. When instruction 401.12(a) is given in concurrent-cause cases, "the phrase 'but-for' is meant to convey the principle that a defendant's actions must, 'more likely than not,' have been 'a substantial factor' in producing the injury." *Whitney*, 157 So.3d at 314. Florida courts have warned of the potential for pattern instruction 401.12(a)'s but-for language to confuse the jury in concurrent cause cases like this one. *See Gray v. Adams Grading & Trucking, Inc.*, 956 So.2d 505, 508 (Fla. 1st DCA. 2007); *Hadley v. Terwilleger*, 873 So.2d 378, 381 (Fla. 5th DCA 2004); *Hart*, 824 So.2d at 931-32. The court properly instructed the jury here.

Neither of the cases Chiquita relies on conflict with the court's instruction. In *Colon*, this Court ultimately left unanswered the question of whether a social-media platform's negligence could be the proximate cause of a terrorist attack because the appellant did not adequately brief the issue. *Colon*, 14 F.4th at 1227. But the court's discussion confirms that (1) "Florida does use the substantial factor/reasonable foreseeability standard for proximate cause" and (2) a defendant may be liable to the victim of a criminal act that the defendant's negligence foreseeably enables. *Id.* at 1224-25. In *Riley v. Tesla, Inc.*, No. 22-12515, 2025 WL 881387 (11th Cir. Mar. 21, 2025) (unpublished), this Court rejected the plaintiff's

25

argument that the alleged product defect (lack of fire retardant) was a concurring cause because it was dependent upon the primary cause of the injury (the fire). *Id.* at *10. Here, the concurring causes were the AUC's multiple sources of income, and Chiquita does not suggest that its unlawful payments and support to the AUC were somehow dependent upon the AUC's other sources of income.[6]

In sum, where a defendant's negligence is one of multiple causes that contribute to a third-party crime, Florida law holds the defendant liable to the victims of the crime if the negligence is a substantial factor in bringing about the criminal act and the criminal act is foreseeable. This is what the court instructed the jury.[7]

---

[6] Chiquita's suggestion that its payments and support to the AUC "alone could not have killed the decedents" is beside the point. AOB39. The sale of a rifle alone cannot cause harm, yet it may lead to liability under Florida law if the rifle is foreseeably used to shoot a police officer. *See K-Mart Enters. of Fla., Inc. v. Keller*, 439 So.2d 283, 285-87 (Fla. 3d DCA 1983). The AUC's subsequent crimes were intervening causes, not concurring causes, and the district court correctly instructed the jury that it must find that the AUC's crimes were foreseeable.

[7] Chiquita's argument that the district court instructed the jury that it should find for Plaintiffs if it merely concluded Chiquita's actions "decreased the decedent's chances of survival" takes a single line of the instructions out of context. Negligence that increases the plaintiff's risk of injury is a substantial factor of that injury. *See Cohen*, 203 So.3d at 950. Taken "as a whole," *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), the instructions correctly required the jury to find Chiquita's negligence was a substantial factor in causing the decedent's murders.

## 2.  Chiquita waived its argument that Florida law requires "but-for" causation

Below, Chiquita agreed with the district court and the Plaintiffs that, if Florida law governed, a substantial-assistance causation standard should apply. Chiquita proposed three alternative causation instructions: a "but-for" causation instruction under its interpretation of Colombian law; a substantial-assistance instruction under its interpretation of Florida law; and a substantial-assistance instruction under its interpretation of federal common law. Vol25App5639-58. Chiquita did not at any point propose a "but-for" causation standard under Florida law. *Id.*

For its Florida instruction, Chiquita proposed: "In order to prove the element of causation in this case, Plaintiffs must prove by a preponderance of the evidence that Chiquita aided and abetted the AUC by providing 'knowing substantial assistance.'" Vol25App5642. During the charging conference at trial, when the district court reaffirmed that it would follow the substantial-assistance test it applied on summary judgment, Chiquita objected on grounds that Colombian law would purportedly apply a but-for causation test, and it alternatively disputed the wording of the court's proposed instruction based on Chiquita's reading of federal aiding-and-abetting principles. Vol58App13154-13165. But Chiquita again made no suggestion that Florida law would apply but-for causation to the facts of this case. *Id.*; *see also* Vol58App13155:9-10 (Chiquita's counsel asserting that U.S.

27

common law "is markedly different than" Chiquita's purported Colombian but-for standard). This is the exact opposite of the position Chiquita takes on appeal – that Florida applies the same "but-for" standard it erroneously ascribes to Colombia.

Chiquita's position below amounts to a waiver – or at the very least a forfeiture – of its new position. *See, e.g.*, *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 809 (11th Cir. 2015); *U.S. v. Moore*, 525 F.3d 1033, 1048 (11th Cir. 2008), *abrogated on other grounds by McDonnell v. U.S.*, 597 U.S. 550 (2016);[8] *see also Anderson v. Brown Indus.*, 614 F. App'x 415, 418-19 (11th Cir. 2015) (objection to instruction "on different grounds" insufficient to preserve position on appeal). The court should not permit Chiquita to undo a six-week trial based on a position that Chiquita never gave the district court the chance to consider.

## C.    Colombian law does not require "but-for" causation

Even assuming the district court abused its discretion in looking to Florida law, Chiquita's claim that Colombia always requires but-for causation is wrong. Vol25App5573-74 ¶24; Vol17App3826 ¶54. Colombian courts apply a variety of causation standards, including adequate causality, concurrent causality, joint causality, and additional causes. Vol25App5702 ¶¶56, 60; Vol16App3676-78 ¶¶56-62; Vol25App5572-73 ¶23; Vol17App3826-27 ¶¶51-60. Indeed, Chiquita's

---

[8] Even if only a forfeiture, Chiquita cannot show plain error. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999); *see also supra* pp.20-26.

second expert (in his fifth of nine declarations) stated Colombia has used "different theories of causation to determine what is the cause." Vol25App5702 ¶56.

Chiquita claims that Plaintiffs' expert, former Colombian Supreme Court Justice Jaime Arrubla, agreed that but-for causation always applies, selectively excerpting one line from a lengthy case quotation in a footnote. But Justice Arrubla was quoting a case on joint-and-several liability, not causation in that footnote. And Chiquita fails to include the full quotation, which states "but if this conduct is the only cause or *part of concurrent cause,* then said liability is set" and continues to discuss joint and several liability. Vol17App3911 n.39 (emphasis added). In the same declaration Arrubla provided the following example, which clearly rejects but-for causation:

> In a case such as that of paramilitary violence … with the participation of many perpetrators, funders, and general sponsors of the acts of violence. Therefore, it would not be possible for any of these perpetrators or participants to be absolved of responsibility by simply saying that had their conduct not happened, the result would have been the same nonetheless, because if such a hypothesis of exoneration were admitted, in the presence of unquestionable damages, no one would be responsible.

Vol17App3909 ¶61.

Chiquita's claim that but-for causation always applies is refuted by the 2021 Colombian Supreme Court decision on which its expert primarily relies. AOB19; Vol25App5696, 5701-02 ¶¶21, 53, 60 & nn.12, 28, 30. That case acknowledged that "multi-causality" principles apply under certain circumstances, Supreme Court

of Justice, Aug. 18, 2021, No. SC3460-2021 (Colom.) at 33;[9] held that there is no "absolute or inflexible rule" for causation, *id.* at 24; discussed cases that did not apply but-for causation, including theories such as concurrent and alternative causation, *id.* at 19 n.8, including even a "presumption of causality," *id.* at 34 & n.34; and noted that other potentially valid causation theories exist that Colombian law has yet to apply, *id.* at 24 & n.20. This case refutes the notion that Colombian courts inflexibly apply but-for causation.

### D. *Twitter* does not help Chiquita

Chiquita claims that the jury instructions conflict with *Twitter*, but *Twitter* does not apply. Even if it did, *Twitter* is perfectly consistent with the jury charge.

*Twitter* is not controlling. Chiquita argues only that *Twitter* applies to "federal common law aiding-and-abetting cases." AOB40; *see* 598 U.S. at 485 (applying federal common law to flesh out a federal statute). The decisions Chiquita cites concern federal statutory construction. *United States v. White*, 2023 WL 9016456, at *6 (11th Cir. Dec. 29, 2023); *Amazon Servs. LLC v. USDA*, 109 F.4th 573, 581 (D.C. Cir. 2024) (*Twitter* sets forth general rule about use of phrase "aids and abets" in a statute). But because this is a diversity action, *state* law, including Colombian law under state choice-of-law rules, governs. *Erie R. Co. v.*

---

[9] Only excerpts of this case are in the record. Plaintiffs submit the full case and a certified translation in an Addendum. *See* Fed. R. App. P. 32.1(b). Page cites are to the translation.

*Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co*. 313 U.S. 487, 496 (1941). *Twitter* did not address Florida or Colombian law.

The district court's summary-judgment decision did cite federal common-law cases as persuasive. Vol19App4372-73. But the court drew the applicable knowing, substantial-assistance standard from *Florida* law to fill the gap in Colombian law left by the parties' experts. Vol19App4373-74.

Chiquita claims the court "ignor[ed]" *Twitter*. AOB41 (citing Vol23App5120). To the contrary, the court carefully considered *Twitter* multiple times. *E.g.*, Vol23App5119-20. Moreover, the court applied the *same* standard as *Twitter*: liability exists where the defendant gives the primary tortfeasor "knowing and substantial assistance." 598 U.S. at 491; *accord id.* at 486, 495, 497, 503. Chiquita's own proposed instructions included that traditional standard. Vol38App8755.[10] And the court's instructions applied it. Vol61App13867-68. There was no error.

---

[10] Chiquita criticizes reliance on *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), but *Twitter* reaffirmed *Halberstam's* knowing substantial assistance standard. 598 U.S. at 487. And while Chiquita recites *Halberstam*'s facts, AOB42-43, the facts are "not totemic." *Twitter*, 598 U.S. at 485, 496. *Twitter* applied *Halberstam* to very different facts: an omission by a provider of routine publicly available services, asking whether social-media companies abetted ISIS terrorists by failing to prevent them from using the companies' public platforms like anybody else. 598 U.S. at 498. This case does not involve an omission or publicly available services, but knowing support to a terrorist organization.

Chiquita now says the court should have used other language, but "there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1289-90 (11th Cir. 2014). And here, there is not even that.

Contrary to Chiquita's argument, AOB40, the instructions did in fact require "each Plaintiff" to prove Chiquita's assistance "substantially increase[d] … the probability that *the Plaintiff's relative* would be a victim." Vol61App13867 (emphasis added).

While Chiquita argues its assistance must have "directly" aided each murder, AOB44-45, *Twitter* specifically *rejected* that argument, 598 U.S. at 494, and explained that defendants may be liable for torts that were "a foreseeable risk." *Id.* at 495-96, 502. Indeed, *Twitter* endorsed *Halberstam*, which held a defendant liable for abetting a murder committed during a string of burglaries she assisted, even though she "did not lend any specific support to [the] murder." *Id*. at 495 (citing 705 F.2d at 487-88). Liability "does not always demand a strict nexus between the alleged assistance and the [injurious] act." *Id.* at 497. Nor must Plaintiffs prove the AUC relied on Chiquita's support every time it acted, AOB43; that would revive the direct support requirement *Twitter* rejected. And contrary to Chiquita's claim, AOB42, *Twitter* has no but-for causation requirement.

Chiquita also complains that the district court did not use the word "culpable," but it is unclear how inclusion of that word would assist Chiquita. The court instructed the jury that it was a violation of Colombian law to contribute resources to armed groups and that after 2001, the United States designated the AUC as a Foreign Terrorist Organization and a Specially Designated Global Terrorist. Vol61App13866-7.

The district court drew the *mens rea* instruction from Colombian law as both parties agreed that the appropriate standard was "a reasonable businessperson." Vol61App13865. There was thus no need to gap-fill with Florida law. Chiquita's argument that the jury should have been told that "knowing" means "voluntarily and intentionally" or that Chiquita must have "sought by their actions to make [the AUC] succeed" is unrelated to causation. Colombian law does not require a defendant seek to bring about a harmful action to violate its duty to behave as a reasonable businessperson – negligence suffices.

Chiquita's arguments try to shift its burden of proving it acted under duress onto the Plaintiffs to disprove. AOB43-44. The duress instructions, which Chiquita does not challenge, correctly required Chiquita to prove its affirmative duress defense. Vol61App13874, *see* Fed. R. Civ. P. 8(c) (duress is an affirmative defense); 2 Wayne R. LaFave, Substantive Criminal Law § 9.7(a) (3d ed. 2024 update) (duress defense's rationale "is not that the defendant . . . has not engaged

33

in a voluntary act."). Chiquita argued up and down that it was extorted. But the evidence showed otherwise, *supra* pp.7-8, and the jury rejected Chiquita's claim. Vol61App13884. Instructing the jury that it must find Chiquita acted "voluntarily" to find causation could have confused the jury as to which party had the burden on Chiquita's duress defense, especially since there is no contention that Chiquita's support for the AUC was unintentional or the product of mistake or accident. *Samples v. Atlanta*, 916 F.2d 1548, 1550 n.1 (11th Cir. 1990). Nothing in *Twitter* suggests that a plaintiff must disprove a duress defense to show aiding and abetting.

Regardless, *Twitter* requires only "some degree of knowledge that a defendant's actions are aiding the primary violator," 598 U.S. at 491 (cleaned up); *accord* Vol38App8755 (Chiquita's proposed instructions). The district court's explanation that "contributions are knowingly made when the contributor understands the mission of the organization" is fully consistent with *Twitter.* Vol61App13867-68. As the district court and the Seventh Circuit observed, contributing to what one knows is a terrorist organization "amounts to knowingly contributing to the organization's terrorist activities." Vol19App4373 (citing *Boim*, 549 F.3d at 698).

The Supreme Court's recent opinion, *Smith & Wesson Brands, Inc. v. Estados Unidas Mexicanos*, No. 23-1141 (U.S. June 5, 2025), applied federal

34

*criminal* (not civil) standards. Slip. Op. 3. To the extent it is relevant, it reaffirms *Twitter*'s inapplicability here. *Smith & Wesson*, like *Twitter*, found a complaint failed to plausibly allege aiding and abetting a violation of a federal statute where the defendant manufacturers sold firearms to retail distributors on equivalent terms. Slip. Op. 11. Mexico failed to allege any criminal transactions involving defendants and, moreover, defendants sold to independent middlemen, not criminals. *Id.* at 10. *Smith & Wesson* contrasted *Twitter* with *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), where sales were repeatedly made to a doctor who violated narcotics law. *Smith & Wesson*, Slip Op. 11.

This case is closer to *Direct Sales* than to *Twitter* or *Smith & Wesson*. The jury did not hold Chiquita liable for providing generally available services to the public. It held Chiquita liable for financially supporting and arming the AUC and providing it access to its port to import weapons and export guns.

To the extent federal aiding-and-abetting law provides any guidance, it provides no basis to reverse the jury's verdict.

### E.     Chiquita is not entitled to judgment

The district court did not err in instructing the jury. But even if this Court disagrees, Chiquita's remedy is a new trial, not judgment in its favor. Citing only the out-of-context statement of Plaintiffs' Colombian law expert (who was making a point about money being a fungible good, not opining on the evidentiary record,

35

which he did not review, Vol25App5565), Chiquita asserts that Plaintiffs could not prevail under a but-for causation standard. AOB45.[11] Not so.

Plaintiffs submitted ample evidence from which the jury could have concluded that, absent Chiquita's support, the AUC would not have had the operational capacity in the banana-growing regions needed for it to murder the Plaintiffs' decedents. The evidence showed Chiquita financed 40-to-50 percent of the salaries for AUC fighters in the banana-growing regions; that most of the AUC's funding in the banana region came from donations, not drug revenue; that the AUC used Chiquita's money to buy drugs; and that Chiquita provided the AUC access to its port, allowing it to import guns and export drugs. *Supra* pp.5-7. Moreover, the district court limited Plaintiffs' expert testimony because, having rejected Chiquita's but-for causation standard, the court believed the evidence was too attenuated to the issues at trial. Vol1SuppApp145. If the district court had accepted Chiquita's argument, Plaintiffs would have had a different presentation with additional evidence demonstrating but-for causation.

Accordingly, Chiquita's improper request for judgment should be denied.

---

[11] This Court has no jurisdiction to review the court's order denying summary judgment. Although the district court's interpretation of the causation standard may be a "purely legal issue[]" that the court can resolve, the court cannot "without reference to any disputed facts" determine whether summary judgment would have been warranted under a "but-for" standard. *Dupree v. Younger*, 598 U.S. 729, 735 (2023).

## II.    The district court did not err in precluding Chiquita from calling one of Plaintiffs' counsel to testify

At trial, Chiquita sought to cross-examine one of Plaintiffs' counsel, Collingsworth, about allegations that he had made improper payments to AUC leaders Raul Hasbún and Jose Mangones.[12] The district court considered this allegation in numerous proceedings since 2015 and was well-versed on the issue. Instead of acceding to Chiquita's desire for a trial-within-a-trial, the court allowed Chiquita to present the issue to the jury and to argue that the allegations should cause the jury to rule against Plaintiffs. In doing so, the court risked severe prejudice to all of the Plaintiffs, especially those not represented by Collingsworth. The acceptance of command responsibility for the killings by AUC leaders Hasbún and Mangones was a small part of the evidence tying the decedents' murders to the AUC. The district court acted within its trial-management discretion in allowing Chiquita to raise this allegation without unduly prejudicing the Plaintiffs by allowing Chiquita to cross-examine attorney Collingsworth before the jury. Moreover, the district court did not prevent Chiquita from cross-examining

---

[12] Chiquita attempts, without evidence, to tar all of Plaintiffs' counsel. Allegations were made against one lawyer, Collingsworth, who was part of the legal team representing one family. Although Collingsworth played a de minimis role in this litigation (he only presented one claimant at trial), Chiquita repeatedly focused its defense on allegations that Collingsworth made improper payments to two paramilitaries. To protect their clients and keep the focus on Chiquita's payments, the remaining Plaintiffs moved to sever Collingsworth's client from the bellwether trial. DE 3488. This motion was denied. Vol38App8667.

Plaintiffs' witnesses or introducing its own evidence, other than by calling counsel. Indeed, Chiquita, not Plaintiffs, introduced Hasbún's testimony

Federal Rule of Evidence 403 allows the district court to exclude evidence if "its probative value is substantially outweighed by a danger of," inter alia, unfair prejudice, confusing the issues, or misleading the jury. This Court reverses a district court only where "exclusion of the evidence resulted in manifest injustice or a substantial prejudicial effect to" the appellant. *Anderson v. WBMG-42*, 253 F.3d 561, 566 (11th Cir. 2001) (quotation marks omitted).

Plaintiffs proved that the AUC killed the decedents through eyewitness testimony of relatives, neighbors, and friends who witnessed their loved ones being abducted or murdered. *Supra* pp.2-3. Plaintiffs also relied on their expert's temporal and geographic analysis of AUC killings, as well as information on AUC targeting and methods of killing. *Id.*; Vol46App10399:8-10410:7. Chiquita thoroughly cross-examined these witnesses.

Lastly, Plaintiffs introduced confessions from Colombia's Justice and Peace Process as corroboration. Vol46App10414:21-10417:18. Four decedents (none represented by Collingsworth) were included in Acta 138, a Colombian Prosecutor's charging document that lists these decedents among the victims charged to Hasbún, who accepted responsibility for the deaths. Vol46App10416:8-25. Three decedents (only one represented by Collingsworth) were charged to

38

AUC leader Mangones. Vol46App10415:6-10. One victim was not linked to either Hasbún or Mangones. Significantly, the jury declined to find that the AUC killed one of the victims listed in the Hasbún Acta, revealing the jury did not conclusively rely on these confessions. Vol61App13882. Any error in limiting Chiquita's ability to undermine the Justice and Peace findings by calling Collingsworth to testify was necessarily harmless.

Moreover, Chiquita did have an opportunity to undermine the Justice and Peace findings. Chiquita cross-examined Professor Kaplan on the reliability of Hasbún's confession in light of the witness payment allegations, including by having him review Hasbún's deposition testimony about the alleged payments. Vol46App10450:22-10451:25. Kaplan explained that the Justice and Peace process had robust checks, including verification through the Attorney General's office that included review of police records and exhumation of graves (Vol46App10410:23-10414:20) and that he worked to confirm the testimony through his own independent research (Vol46App10455:15-24).[13] Chiquita chose not to cross-examine Kaplan on the purported payments to Mangones. Vol46App10432:1-

---

[13] *Carrizosa*, 47 F.4th at 1298, considered the admissibility of the Acta and noted that "both the executive and judicial branches in Colombia carry out independent investigations to corroborate any confession made by a paramilitary participant."

10435:12, 10438:3-10440:9. Chiquita misleadingly quotes a fragment of the court's directions to claim that the district court "prohibited Chiquita from questioning Kaplan about witness payments." AOB51. The court permitted questioning about whether the allegations changed Kaplan's opinion, it just did not allow Chiquita to ask Kaplan to read hearsay into the record. Vol46App10451:21-10452:25. Chiquita examined its own expert, Professor Restrepo, at length on the reliability of the Hasbún's and Mangones' Justice and Peace confessions but chose not to ask him about the alleged witness payments or show him the Hasbún deposition transcript. Vol54App12394-433; Vol55App12541-95, 12604-19, 12663-80; Vol56App12681-82.

Far from having "no meaningful opportunity" to present its own evidence, AOB48, Chiquita introduced Hasbún's testimony regarding the purported payments. Vol62App14115-15137. Hasbún testified that he did not know Collingsworth but provided testimony regarding a proposed payment to his attorney and its purpose. Vol62App14135.

Chiquita's closing argument highlighted Collingsworth's interactions with Hasbún as one of the five main "facts" of the case and discussed the allegations at length. Vol60App13671:14-22, Vol60App13673:2113674:4, Vol60App13682:3-7, Vol60App13705:23-13706:16. Given the evidence and argument that the district

court permitted regarding Collingsworth, there is no truth to Chiquita's claim that there was a "blanket preclusion of Chiquita's evidence." AOB51.

Calling opposing counsel to testify before a jury is an extraordinary request, and this Court and others have held that it requires a compelling need. *United States v. Roberson*, 897 F.2d 1092, 1098 (11th Cir. 1990); *United States v. Watson*, 952 F.2d 982, 986 (8th Cir. 1991); *United States v. Ashman*, 979 F.2d 469, 494 (7th Cir. 1992); Restatement (Third) of the Law Governing Lawyers § 108. There is no compelling need to call counsel when there are "other witnesses available." *Roberson*, 897 F.2d at 1098. Courts of appeals "will not reverse the district court's ruling on such a motion 'absent a clear and prejudicial abuse of discretion.'" *Ashman*, 979 F.2d at 494 (quoting *Watson*, 952 F.2d at 986).

The district court exercised its discretion based on deep familiarity with the issue. Chiquita has accused Collingsworth of witness tampering for more than a decade, starting in a January 2015 brief opposing Plaintiffs' request to depose Mangones. The district court carefully considered Chiquita's filing and ruled that, while Chiquita did "not present any competent evidence linking any of plaintiffs' counsel in this case to any (non-expert) witness payment activity," it would grant Chiquita discovery into the issue before the Mangones deposition could proceed. Vol1SuppApp119-20.

41

The district court closely supervised this discovery, at one point conducting a "careful review of the documents submitted for *in camera* inspection," most of which it ordered produced. Vol1SuppApp136. Later, prior to trial, Chiquita proffered evidence that purportedly evinced Collingsworth's misconduct. Judge Marra reviewed Chiquita's evidence alongside past filings dating back years and concluded: "Based on the record, it appears to the Court that the only payments Collingsworth made went to Colombian attorneys to pay for costs incurred on behalf of Colombian Plaintiffs." Vol38App8665. Thus, Chiquita's assertions that "the court simply credited Plaintiffs' counsels'" declarations, AOB50, is simply not true. The court reviewed, and cited in its order, documentary evidence submitted by both parties and stated that its ruling was based on "the record" before it. Vol38App8667.

The district court struck a middle ground. Recognizing the prejudice to Plaintiffs if counsel were called to testify, the court prohibited Chiquita from calling Collingsworth, Vol38App8665-6, and it later prohibited Chiquita from introducing documents containing counsel's out-of-court statements. Vol57App12927-99. But it did "not preclude Defendant's potential examination of non-lawyer witnesses as to payments either allegedly received or offered." Vol38App8667. Chiquita could have introduced evidence of the alleged payments through non-attorney witnesses and it *did* introduce Hasbún's testimony. Chiquita

42

certainly cannot show a "compelling need" to introduce counsel's testimony and out-of-court statements. *Roberson*, 897 F.2d at 1098.

The district court's careful approach to Chiquita's accusations warrants great deference. The court's factual findings that Chiquita's proffered evidence did not demonstrate any misconduct by counsel are subject to clear-error review. *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012). Chiquita ignores the district court's familiarity with the evidence and arguments from over a decade of litigation and does not argue that the court's reading of the evidence was clearly erroneous.

Furthermore, Plaintiffs' request, which the district court was amenable to, for an evidentiary hearing before trial to ensure a full airing of any evidence regarding witness payments and a fair determination of the issues was opposed by Chiquita. Vol37App8447-48. Chiquita cannot now be heard to complain that the district court erred in assessing the evidence after opposing an evidentiary hearing.

Chiquita also complains that the district court did not let it introduce documents pertaining to Collingsworth's alleged misconduct, but it largely fails to identify rulings excluding specific documents. This is forfeiture. Fed. R. App. P. 28(a)(8)(A). Worse, Chiquita cites documents described in its "Amended Notice Regarding Preclusion of Witness Bribery Evidence," which it did not file until *after* the close of evidence. Vol61App13889-902. Chiquita never actually moved

43

to admit some of these documents. Vol61App13889 (referencing "additional

documents" not previously proffered); Vol57App12927:12-14 (moving to admit

only "documents that were part of our proffers that have been on the record").

Moreover, the documents Chiquita sought to introduce are hearsay. Although

Chiquita largely does not identify the documents, most appear to be another

counsel's out-of-court emails or prior statements. Chiquita does not offer any

theory of admissibility. For example, Chiquita relies heavily upon statements made

by attorney William Wichmann during a state-court fee dispute against his former

law firm. AOB13 (citing Vol31App7031:15-16). These statements are not

admissible against Wichmann's clients in another matter. *See* Fed. R. Evid.

801(d)(2)(C); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1198 (3d Cir.

1993) ("[A]n attorney has authority to bind the client only with respect to

statements directly related to the management of the litigation.").

 The alleged improper payments by Collingsworth could only prejudice

Chiquita if (1) the payments were actually agreed to or made; (2) the payments

induced Mangones and/or Hasbún to falsely testify before the Justice and Peace

Tribunal, despite the severe penalties for doing so; (3) Colombian prosecutors

credited these false confessions, notwithstanding their independent investigation of

the facts; and (4) the jury credited the statements but rejected Plaintiffs' other

independent and unrebutted evidence showing AUC members committed the murders.

Given the obvious prejudice to Plaintiffs, especially the nine decedents whose survivors Collingsworth does not represent, and the potential for a distracting trial-within-a-trial on the allegations, the district court's careful trial management did not abuse its discretion.

## III.    The admission of video-taped deposition testimony was within the district court's discretion

The admission of the deposition testimony of Ovidio Nuñez Cabrales and Carlos Bello Arrieta was within the court's discretion. Neither testimony was unsworn.

Federal Rule of Evidence 603 states: "Before testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness's conscience." *See also id.*, Notes of Advisory Committee on Proposed Rules ("Affirmation is simply a solemn undertaking to tell the truth; no special verbal formula is required."). These are "liberal requirements." *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993).

The oath Bello and Nuñez swore at their depositions satisfies Rule 603's "liberal requirements." *Saget*, 991 F.2d at 710. The witnesses promised under law "and before God" to testify truthfully and were threatened with penalties under

U.S. law if they lied. Vol37App8315; Vol37App8307. It was thus an "oath . . . to testify truthfully" and was "in a form designed to impress that duty on the witness's conscience." Fed. R. Evid. 603.

Chiquita's argument lacks any support in Rule 603 or caselaw. Chiquita says the oath should have threatened perjury penalties specifically under *Colombian* law. Whether the oath threatened penalties under U.S. or Colombian law is beside the point: nothing in Rule 603 requires an oath to threaten penalties *at all*. Chiquita points to no authority suggesting otherwise. Regardless, Bello and Nuñez signed affidavits certifying "under penalty of perjury according to all applicable laws of the Republic of Colombia" that their deposition testimony was true. Vol37App8398; Vol37App8410-11; *cf. Saget*, 991 F.2d at 710.

Chiquita musters only one case in which testimony was rejected for a deficient oath. There, unlike here, the defendant refused to swear *any* oath or affirmation. *United States v. Fowler*, 605 F.2d 181, 185 (5th Cir. 1979). That blanket refusal to swear any oath is incomparable to the oath given here.

Moreover, Chiquita originally proposed the oath about which it now complains. Vol37App8346.[14]

---

[14] Contrary to Chiquita's claim, this oath was previously used for other witnesses without objection. *Compare* Vol37App8307 (oath administered to Bello), *with, e.g.*, Vol37App8331 (unobjected-to oath in earlier deposition). The

Chiquita does not dispute that these depositions were taken before a U.S.-certified court reporter "authorized to administer oaths [] by federal law" as required by Federal Rule of Civil Procedures 28(b)(1)(C).[15] The district court acted within its discretion in admitting this testimony.

The court need not consider the remainder of Chiquita's arguments because they are perfunctory and unsupported and, in several instances, raised only in footnotes. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *ASEDAC v. Panama Canal Comm'n*, 453 F.3d 1309, 1316 n.7 (11th Cir. 2006). But it is clear the district court acted within its discretion as Plaintiffs show with some illustrative examples. For example, the court acted within its discretion to exclude as irrelevant impeachment evidence Nuñez's employment records because Nuñez freely admitted that Chiquita terminated him and explained why. Vol55App12529-30. Another example: Hasbún's testimony from unrelated litigation denying that Chiquita was involved in a gun-smuggling scheme is

---

only difference was the oath for Bello and Nuñez omitted including that the U.S. judge could "dismiss your case," which makes no sense for third-party witnesses.

[15] The criminal cases Chiquita cites concerning foreign depositions are irrelevant and turned on the defendants' failure to show the witnesses' unavailability to testify at trial, as required by the Federal Rule of Criminal procedure 15(a)'s exceptional-circumstances requirement. *See United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir. 1988); *United States v. Oudovenko*, No. 00-cr-1014, 2001 WL 253027, at *3 (E.D.N.Y. Mar. 7, 2001); *see also* Fed. R. Crim. P. 15(a).

hearsay. Hasbún's testimony only contradicts Bello's testimony if it is true, so it must meet a hearsay exception. *Bratt v. Genovese*, 782 F. App'x 959, 967 (11th Cir. 2019). The testimony is not admissible under Rule 804(b)(1) because Plaintiffs, who were not parties to that case, did not have "an opportunity and similar motive to develop" Hasbún's testimony. Hasbún's statement denying *Chiquita's* role in the AUC gun-smuggling scheme was not contrary to Hasbún's penal interests under Rule 804(b)(3). And he was not "unavailable" under Rule 804(b)(3) because Chiquita had "reasonable means" to procure his testimony: the deposition he sat for *in this case*. *Carrizosa*, 47 F.4th at 1309.

Chiquita asserts in a footnote that the district court should have excluded as unfairly prejudicial Nuñez's testimony that Chiquita security personnel coordinated with the AUC to abduct and murder Chiquita's own workers. *See supra* p.6. There was no unfair prejudice. Chiquita's primary defense at trial was that it was the AUC's hapless extortion victim. Nuñez's testimony, among other evidence, showed collaboration. This evidence certainly undermined Chiquita's primary defense, but Rule 403 distinguishes "between unfair prejudice and relevant evidence that is simply adverse to the opposing party." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1352 (11th Cir. 2020) (internal quotation marks omitted).

The evidentiary rulings to which Chiquita alludes were proper exercises of the district court's discretion, and Chiquita fails to argue otherwise.

## IV.    The district court did not abuse its discretion when it declined to reduce the jury's award

The district court acted within its discretion when it denied Chiquita's motion to reduce the jury's award. The court rested its decision on two independent grounds. First, the court evaluated nine briefs and eight expert reports submitted by both parties to determine that Colombia does not cap non-economic damages. Vol65App14911. Second, the court found that under this Circuit's precedent, even if there were caps, the caps would not apply to Chiquita. Vol65App14913. Neither was an error, let alone both.

In *Piamba Cortes v. American Airlines*, 177 F.3d 1272, 1299 n.22 (11th Cir. 1999), this Court explained that where, as here, there is "pervasive and profound" disagreement about foreign law, a party's citation on appeal to its own expert's affidavit "fails to persuade us that the district court's analysis is erroneous." This Court should hold the same here. Chiquita argues, as it did below, that Colombian law caps non-economic damages at $51,000, citing its own expert report. AOB57. But the district court reviewed that expert's caselaw and found that the cited cases "state the opposite": the amount cited "does not serve as a limit or maximum cap for this type of damages; it is simply a reference." Vol65App14911. Consistent

49

with the court's finding, the sole Colombian case Chiquita cites did not impose caps but rather evaluated whether the jurisdictional amount-in-controversy was met by comparing what courts "ordinarily granted" in similar cases. Vol63App14505. Plaintiffs' expert reviewed over 130 Colombian Supreme Court opinions and did not find a single case that supported Chiquita's asserted "cap." Vol63App14344. To the contrary, at least two dozen cases state that there are no caps and judges should award compensation based on the facts. Vol63App14346, 14356-64.

It was undisputed below that *no* Colombian statute imposes caps on civil damages. Vol65App14911 (citing Defendant's expert). Colombia's legislature declined to establish a cap in civil cases when it set limits (many times higher than what Chiquita proposes) for damages in criminal cases, confirming that if the legislature intended to limit civil damages, it would have. Vol24App5310 ¶14, 5315-16 ¶30. Instead, Colombia by statute requires courts to "fully compensate" the claimant. Vol65App14912 (citing Chiquita's experts). This should end the inquiry. As this Court has found, "Colombia is a civil law country, so the source of legal authority is statutory law or legislative statutes – not case law. . . . 'Stare decisis' is not applicable in Colombia.'" *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1212 (11th Cir. 2022).

Indeed, Chiquita's original expert agreed that Colombian law does not cap damages (including in his published treatise) and that Colombian courts are

required by statute to award full compensation. Vol64App14549; Vol1SuppApp9 ⁋30 (citing Article 16 of Law 446 of 1998); Vol1SuppApp50-51 ⁋33 (same); Vol6SuppApp1280 ⁋18. Chiquita twists out of context one paragraph in an expert report and an awkwardly worded footnote in a long-ago brief[16] to argue that "Plaintiffs previously acknowledged the caps." Not so. Plaintiffs' expert, Arrubla, filed several expert reports, all confirming that Colombia does not cap damages. To avoid any doubt, he stated unequivocally that "I do not agree that there are mandatory ceilings for moral damages [i.e., non-economic damages] that Colombian courts are obliged to follow . . . Colombia has not enacted mandatory caps on civil damages." Vol6SuppApp1272 ⁋⁋2-3; *accord* Vol16App3673 ¶50. As the district court correctly held, Colombia does not cap civil damages.

As an independent ground for its ruling, the district court followed this Court's precedent to hold that any purported Colombian damages caps would not limit the jury's award. In *Foster v. United States*, 768 F.2d 1278, 1280 (11th Cir. 1985), this Court explained that choice-of-law analysis was not a mechanical process but involved weighing the states' interests according to the purposes sought to be achieved. *Piamba Cortes* applied that traditional choice-of-law

---

[16] During the forum non conveniens briefing, Plaintiffs requested that Chiquita post a surety bond in an amount at least consistent with Colombian court awards. Vol13App2980 & n.24.

analysis to a case involving Colombian decedents and a defendant, like Chiquita, doing business in Florida. This Court found that although Colombia possessed an interest in applying its compensatory damages scheme to Colombian decedents, the absence of a Colombian defendant who would benefit from Colombia's more restrictive scheme rendered those interests less compelling. The Eleventh Circuit determined Florida law would apply because "[i]n contrast, the application of Florida law furthers the policies underlying Florida's compensatory damages scheme as well as the field of tort law in general, and—importantly—would not frustrate the policies underlying Colombia's damages scheme." *Piamba Cortes*, 177 F.3d at 1303; *accord Foster*, 768 F.2d at 1283 (declining to apply limitation on recovery where there is no domiciliary defendant "because it advances no policy behind the limitation.").[17] The district court properly followed this precedent.


## V.    The district court did not err by submitting the hazardous-activity claim to the jury

The district court did not err in submitting Plaintiffs' hazardous-activities claim to the jury. Chiquita's argument that the hazardous-activity instruction

---

[17] *McDaniel v. Petroleum Helicopters, Inc.*, 455 F.2d 137, 138 n. 1 (5th Cir. 1972), does not assist Chiquita. The parties there agreed on a damages cap and regardless the Fifth Circuit stated that it would defer to the lower court's determination. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220 (3d Cir. 1995), is inapposite. The parties there agreed on the Indian law. *Id.* at 1234. Chiquita did not establish that the same principles exist in Colombian law.

invalidates the jury's verdict on Plaintiffs' *other* claim ignores the well-established presumption that the jury follows instructions. *United States v. Roy*, 855 F.3d 1133, 1186 (11th Cir. 2017). Indeed, this Court has "emphasized the desirability of withholding judgment on a directed verdict motion until after the jury has returned a verdict." *Therrell v. Ga. Marble Holdings Corp.*, 960 F.2d 1555, 1569 (11th Cir. 1992). This is exactly what the district court did. Vol54App12435:23-12436:18. If Chiquita were correct that submitting a subsequently dismissed claim to the jury is reversible error, then trial courts would be risking reversal every time they follow this Court's directive in a multi-claim case, to the great detriment of judicial economy.

Chiquita misreads the only case it cites. In *Hamm v. Powell*, 874 F.2d 766, 770 (11th Cir. 1989), *on reh'g in part*, 893 F.2d 293 (11th Cir. 1990), the district court's error was not that it simply waited until after the verdict to dismiss the plaintiff's false arrest claim. Rather, this Court held that the error was "[t]he *failure to instruct* the jury that appellants had had adequate cause for the arrest." *Id.* at 470 (emphasis added). This mattered because the lawfulness of an arrest bears directly on whether the force used is excessive. *See Windsor v. Eaves*, 614 F. App'x 406, 411 (11th Cir. 2015) (citing *Hamm*). Here, the district court's narrow ruling that financial transactions are not considered hazardous activities under the Colombian

Civil Code was irrelevant to the jury's consideration of Plaintiffs' general tort liability claim.

Neither *Hamm* nor common sense support Chiquita's argument that jury instructions defining *hazardous activity* somehow influenced the jury's *causation* finding on Plaintiffs' general tort liability claim. The causation instructions for both counts were the same. Vol61App13867, 13871-72. And Chiquita fails to explain how the hazardous activity causation instruction "diluted" an identical general tort causation instruction. AOB46-48. The district court committed no error.

## VI.  The jury's hazardous-activity finding is an alternative ground for affirmance

Even if there were prejudicial error in the district court's general tort liability instructions, that error would be harmless because the jury independently awarded the same damages for hazardous activity liability. Although the court dismissed this claim after trial, *see* Vol65App14908, that dismissal was erroneous; the claim was valid and the instructions on that claim were correct. The jury's hazardous-activities verdict thus provides an alternative ground supporting the judgment.

Under Colombian law, "hazard is a question of facts," Vol17App3753, and so the question of whether Chiquita's conduct in financing terrorism, and providing other support such as arms and ammunition, was hazardous was

appropriately left to the jury. All parties agreed that Colombian law provides strict liability for harms connected to hazardous activities, and the district court erred in overturning the jury's verdict and agreeing with Chiquita's argument that "payment of money by its nature alone is not, as a matter of law, a hazardous activity." Vol65App14970.

The district court did not question the sufficiency of the evidence for the jury's finding; instead, it created an unwarranted judicial exception for financing terrorism, ruling that "as a matter of law, payment of money to the AUC is not" a hazardous activity. Vol65App14907. The exclusive focus on Chiquita's financial support of the AUC erroneously overlooked the jury's finding that substantial evidence established other forms of material support directly tied to the AUC's terrorist activities, including assisting in the delivery of large quantities of weapons and ammunition.

Numerous factors referred to by the Colombian Supreme Court in finding hazardous activities – including "risk," "the potential danger inherent to the thing or activity," and "the inability to control them in order to prevent their effects," Vol1SuppApp216, are present in the case of financing terrorism. It is an extremely risky activity, creating massive potential dangers, which Chiquita was unable to control. Even if Chiquita itself had carried out its payments with the utmost care, it set in motion "forces over which [Chiquita] cannot always have absolute control

55

and therefore capable of breaking the previously existing equilibrium."
Vol1SuppApp217-18. Chiquita's support of the AUC is no different than sending a
locomotive speeding down a track; once set in motion, its risks were impossible to
control.

Colombian law does not support the district court's distinction, which relied
in part on U.S. authorities, between "physically dangerous" activities and
"payment of money," Vol65App14906-7 (quoting *Dubai Islamic Bank v. Citibank,
N.A.*, 126 F.Supp.2d 659, 668-69 (S.D.N.Y. 2000)). Even Chiquita's expert agreed
that strict liability flows from activities that "inherently involve an extraordinary
hazard, risk, or danger," where "the harm would not be avoidable."
Vol39App8817. There is no tension between finding – as some Colombian cases
have – that generalized banking services are not hazardous and finding that
*financing terrorism* is. Chiquita knowingly provided targeted, direct support to
terrorists, not generally-available banking services. Indeed, the U.S. Congress has
found that "all contributions to foreign terrorist organizations further their
terrorism," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33 (2010), and there
can be no doubt that a terrorist organization is both uncontrollable and highly
dangerous. It is difficult to see how financing terrorism could be seen as anything
other than a hazardous activity that dramatically increases risks to the community –
and there is certainly no basis to conclude that it *cannot* be, as a matter of law.

56

Regardless, Chiquita did more than make payments, it also helped arm and fuel the AUC, and provided access to its port. *Supra* pp.6-7.

The hazardous-activity verdict stands independently of the general tort verdict because, even if but-for causation were required in general (it is not), it is not required for hazardous activity liability.

Strict causation is not required for hazardous activities; rather, the victim must only show that "the damage . . . is characteristic of the risk such activity entails." Vol17App3923; *see also* Vol1SuppApp165 (people are liable for hazardous activities that create risks, such that damages flowing from those risks "are presumed, in this theory, to have been caused by the respective agent").

The jury instruction required even *more*. The jury needed to find that "providing money and other support to the AUC was an activity that increased the risk to members of the community beyond those to which members of the community are normally exposed" and that Chiquita's assistance "substantially increase[d] the risk of terrorists acts by the AUC and the probability that the Plaintiff's relative would be a victim," Vol61App13871, and, of course, that "the AUC killed the Plaintiffs' relative." Vol61App13865.

Colombian law allows an exception to liability where an irresistible extraneous factor intervenes to cause the injury, but only where that factor is unforeseeable, *see* Vol2SuppApp253, which the jury rejected here. The jury found

57

that Chiquita's support of the AUC created "foreseeable risk of harm to others, including" the decedents. Vol61App13872.

The district court erred in dismissing the hazardous activity claim after trial; the instructions on both liability and causation were correct. Thus, the jury's findings on this claim constitute an independent ground for upholding the verdict.

## **<u>CONCLUSION</u>**

For the above reasons, this Court should affirm the district court's judgment.

Dated:        June 10, 2025                      Respectfully Submitted,

<u>/s/ Agnieszka M. Fryszman</u>
Agnieszka M. Fryszman

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

☑    This document complies with the word limit of FRAP       32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f) and        11th Cir. R. 32-4                      , this document contains         12,950            words.

   **or**

☐    This brief complies with the line limit of FRAP     [insert Rule citation]      because, excluding the parts of the brief exempted by FRAP 32(f) and        [insert applicable Rule citation, if any]                 , this brief uses a monospaced typeface and  contains        [state the number of]          lines of text.

**2.    Typeface and Type-Style**

☑    This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

(s) Agnieszka M. Fryszman
_____

Attorney for   Plaintiffs-Appellees
_____

Dated:   6/10/2025
_____

Rev.: 12/16