**Case No. 24-13770**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

VICTOR PALENCIA GOMEZ et al.,
*Plaintiffs–Appellees*
v.
CHIQUITA BRANDS INTERNATIONAL, INC.,
*Defendant–Appellant*

On Appeal from the United States District Court
for the Southern District of Florida,
The Honorable Kenneth A. Marra/The Honorable Roy K. Altman
No. 08-MD-01916
(IN RE: CHIQUITA BRANDS INTERNATIONAL, INC. ALIEN TORT
STATUTE & SHAREHOLDER DERIVATIVE LITIGATION)

**APPELLANT'S REPLY BRIEF**

Michael L. Cioffi
BLANK ROME LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 362-8701/04
michael.cioffi@blankrome.com

Frank A. Dante
Melissa F. Murphy
Michael A. Stoolman
Serena S. Gopal
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
(215) 569-5645/5334
frank.dante@blankrome.com
melissa.murphy@blankrome.com
michael.stoolman@blankrome.com
serena.gopal@blankrome.com

*Counsel for Defendant–Appellant, Chiquita Brands International, Inc.*

**No. 24-13770**

**Victor Palencia Gomez, et al. v. Chiquita Brands International, Inc.**

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Rule 26.1-2 of the Eleventh Circuit Rules, counsel for Appellant, Chiquita Brands International, Inc. ("Chiquita"), hereby certifies that no publicly held corporation owns 10% or more of Chiquita's stock. Pursuant to 11th Cir. R. 26.1-2(a), counsel for Appellant, Chiquita certifies that the lists of interested persons that have an interest in the outcome of this appeal previously submitted in the Opening and Answer Briefs, to the best of Chiquita's knowledge, are complete.

Dated:      July 31, 2025                         */s/ Michael L. Cioffi*
                                                          Michael L. Cioffi

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement .................C1

Table of Contents ........................................................................................ i

Table of Authorities....................................................................................... iii

Introduction ...................................................................................................1

Argument........................................................................................................2

I.     The District Court's Erroneous Causation Instruction Warrants
Reversal ............................................................................................2

     A.     The District Court Was Required to Apply Colombian Law ...............2

     B.     Colombian Law Requires But-For Causation ......................................7

     C.     In Any Event, Florida Law Requires But-For Causation.....................8

     D.     Plaintiffs Concede that Federal Common Law Cannot Apply............14

     E.     The District Court's Causation Standard Flouts U.S. Supreme
Court Precedent ................................................................................15

     F.     Chiquita Is Entitled to Judgment..........................................................18

II.     The District Court's Unduly Prejudicial Evidentiary Errors Warrant
Reversal ...........................................................................................19

     A.     The District Court Improperly Excluded Witness Payment
Evidence ............................................................................................19

     B.     Admission of Unsworn Testimony Warrants a New Trial .................22

III.     The District Court Erred by Submitting the Hazardous Activity Claim
to the Jury and Plaintiffs' Request to Revive the Claim Is Baseless........24

IV.     At Minimum, Damages Should Be Reduced .........................................26

Conclusion ....................................................................................................28

i

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements ...................................................................30

Certificate of Service ..............................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Arabian Am. Oil Co.*,
  8 F.3d 25, 1993 WL 384568 (9th Cir. 1993)........................................4

*Anderson v. Brown Indus.*,
  614 F. App'x 415 (11th Cir. 2015) ...................................................13

*Animal Science Prods., Inc. v. Hebei Welcome Pharm, Co.*
  585 U.S. 33 (2018)..................................................................2, 5

*Aycock v. R.J. Reynolds Tobacco Co.*,
  769 F.3d 1063 (11th Cir. 2014) .......................................................21

*Beijing Abace Biology Co. v. Zhang*,
  122 F.4th 448 (1st Cir. 2024)........................................................5, 6

*Bell Helicopter Textron, Inc. v. Arteaga*,
  113 A.3d 1045 (Del. 2015) ..........................................................6, 7

*Boim v. Holy Land Found. for Relief & Dev.*,
  549 F.3d 685 (7th Cir. 2008) .........................................................12

*Bratt v. Genovese*,
  782 F. App'x 959 (11th Cir. 2019) ...................................................23

*Cavic v. Grand Bahama Development Co.*,
  701 F.2d 879 (11th Cir. 1983) .........................................................4

*Circa Ltd. v. City of Miami*,
  79 F.3d 1057 (11th Cir. 1996) .......................................................24

*Cohen v. Philip Morris USA, Inc.*,
  203 So.3d 942 (Fla.4th DCA 2016)...................................................11

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009) ........................................................4

*Cozzo v. Tangipahoa Par. Council-President Gov't*,
  279 F.3d 273 (5th Cir. 2002) .........................................................20

*Cuba R.R. v. Crosby*,
    222 U.S. 473 (1912)......................................................................2, 3, 4

*Dewey v. Bechthold*,
    2019 WL 5429373 (E.D. Wis. Oct. 23, 2019)...................................19

*Direct Sales Co. v. United States*,
    319 U.S. 703 (1943).....................................................................17, 18

*Doubleday v. Ruh*,
    149 F.R.D. 601 (E.D. Cal. 1993) .......................................................19

*Dover v. R.J. Reynolds Tobacco Co.*,
    2014 WL 4723116 (M.D. Fla. Sept. 22, 2014)..................................13

*El Paso Nat. Gas Co. v. Neztsosie*,
    526 U.S. 473 (1999).............................................................................25

*Ferrostaal, Inc. v. M/V Sea Phoenix*,
    447 F.3d 212 (3d Cir. 2006) ............................................................4, 5

*Freedman v. magicJack Vocaltec Ltd.*,
    963 F.3d 1125 (11th Cir. 2020).......................................................4, 5

*Garcia v. Chiquita Brands International, Inc.*,
    48 F.4th 1202 (11th Cir. 2022) ......................................................5, 26

*Gathercrest, Ltd. State Bank of India v. First Am. Bank & Tr.*,
    805 F.2d 995 (11th Cir. 1986) ...........................................................11

*Haitian Refugee Ctr., Inc. v. Baker*,
    949 F.2d 1109 (11th Cir. 1991) .........................................................25

*Hamm v. Powell*,
    874 F.2d 766 (11th Cir. 1989) ...........................................................24

*Johansen v. Combustion Eng'g, Inc.*,
    170 F.3d 1320 (11th Cir. 1999) .........................................................26

*Johnson v. Continental Airlines Corp.*,
    964 F.2d 1059 (10th Cir. 1992) .........................................................28

iv

*K-Mart Enters. of Fla., Inc. v. Keller*,
   439 So.2d 283 (Fla.3d DCA 1983) ....................................................10

*Kiobel v. Royal Dutch Petro. Co.*,
   569 U.S. 108 (2013)..................................................................2, 3

*Lauritzen v. Larsen*,
   345 U.S. 571 (1953)......................................................................28

*Logan v. Morgan, Lewis & Bockius LLP*,
   350 So.3d 404 (Fla.2d DCA 2022) ......................................................9

*Mamani v. Sánchez Bustamante*,
   968 F.3d 1216 (11th Cir. 2020) ........................................................5

*McDaniel v. Petroleum Helicopters, Inc.*,
   455 F.2d 137 (5th Cir. 1972) .........................................................28

*In re Mines*,
   630 B.R. 107 (Bankr. E.D.N.Y. 2021) .............................................20

*Mutual Service Ins. v. Frit Industries, Inc.*,
   358 F.3d 1312 (11th Cir. 2004) ........................................................4

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)......................................................................27

*O'Donnell v. W.F. Taylor Co.*,
   292 So.3d 785 (Fla.4th DCA 2020) ......................................10, 11, 12

*Otto Candies LLC v. Citigroup Inc.*,
   137 F.4th 1158 (11th Cir. 2025) ..................................................9, 12

*Palencia v. Perez*,
   921 F.3d 1333 (11th Cir. 2019) ........................................................5

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
   842 F.2d 1466 (3d Cir. 1988) ........................................................3, 4

*In re Rawson Food Serv., Inc.*,
   846 F.2d 1343 (11th Cir. 1988) ......................................................17

*Riley v. Tesla, Inc.*,
  No. 22-12515, 2025 WL 881387 (11th Cir. Mar. 21, 2025) .............................10

*Sanders v. American Body Armor & Equip. Inc.*,
  652 So.2d 883 (Fla.1st DCA 1995) ....................................................12

*Schippers v. United States*,
  715 F.3d 879 (11th Cir. 2013) .........................................................6

*Scott v. United States Treasury Dep't*,
  776 F. App'x 612 (11th Cir. 2019) ....................................................14

*Seaboard Air Line Ry. v. Mullin*,
  70 So. 467 (Fla. 1915) ................................................................9

*Smith & Wesson Brands v. Estados Unidos Mexicanos*,
  145 S.Ct. 1556 (2025) ...............................................................16, 17

*Stahl v. Metro. Dade Cnty.*,
  438 So.2d 14 (Fla.3d DCA 1983).....................................................9, 10

*Therrell v. Georgia Marble Holdings*,
  960 F.2d 1555 (11th Cir. 1992) ........................................................24

*Thomas v. UBS AG*,
  706 F.3d 846 (7th Cir. 2013) ..........................................................15

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023).............................................................15, 16, 17

*United States v. Fowler*,
  605 F.2d 181 (5th Cir. 1979) ..........................................................22

*United States ex rel. Osheroff v. Humana Inc.*,
  776 F.3d 805 (11th Cir. 2015) ........................................................14

*United States v. Moore*,
  525 F.3d 1033 (11th Cir. 2008) .......................................................13

*United States v. Roy*,
  855 F.3d 1133 (11th Cir. 2017) .......................................................24

*VFS Leasing Co. v. Markel Ins.*,
   120 F.4th 745 (11th Cir. 2024) ............................................................................14

*Worthen v. Fidelity Nat'l Prop. & Cas. Ins.*,
   463 F. App'x 422 (5th Cir. 2012) .......................................................................25

*Yousuf v. Cohlmia*,
   741 F.3d 31 (10th Cir. 2014) ..............................................................................15

**Other Authorities**

Fed. R. Civ. P. 44.1 ..............................................................................1, 5, 6, 8

Fed. R. Evid. 403 ...............................................................................................19

Fed. R. Evid. 603 ...............................................................................................22

Fed. R. Evid. 801(d)(2)(D) ..............................................................................20

Fed. R. Evid. 804(b)(1) .....................................................................................23

Fed. R. Evid. 804(b)(3) .....................................................................................23

## Introduction

In this case, Plaintiffs seek to recover for torts that occurred in Colombia. Two claims proceeded to trial. The two causes of action were pleaded under two Colombian Civil Code statutes, Article 2341 for negligence and Article 2356 for hazardous activity.

Plaintiffs cannot justify the court's refusal to apply Colombian law to the causation element of Plaintiffs' negligence claim. Causation was an element of Plaintiffs' claim and was theirs to prove. If the court was unsatisfied with Plaintiffs' showing, it should have used all the means available to it under Rule 44.1 as required by this Court and the Supreme Court, or dismiss the case. Nothing, however, gave the court authority to hold Chiquita liable under domestic law.

Even if the court *were* allowed to apply Florida law, the jury instructions were incorrect because Florida, like Colombia, requires plaintiffs to prove but-for cause in every negligence case. Regardless, the court acknowledged that it applied "federal common law," not Florida law, and it applied the wrong federal law too.

Plaintiffs also offer no meaningful response to the harm resulting from Plaintiffs' counsel's witness tampering and testimony from two unsworn Colombian deponents.

And Plaintiffs fail to rebut that the jury should never have deliberated on the hazardous activity claim that the court later barred as matter of law, which prejudiced

1

the deliberations on the negligence claim.

Finally, Plaintiffs cannot disavow the Colombian damages caps they previously invoked when it suited them.

This Court should vacate and enter judgment for Chiquita or, alternatively, remand for a new trial. At minimum, this Court should reduce damages.

## Argument

## I.    The District Court's Erroneous Causation Instruction Warrants Reversal

### A.    The District Court Was Required to Apply Colombian Law

Plaintiffs' argument that the court "did not abuse its discretion in using forum law" (Opp.14) is wrong from start to finish. To begin, this Court's review of a district court's foreign law determination is de novo, not abuse of discretion. *Animal Science Prods., Inc. v. Hebei Welcome Pharm, Co.* 585 U.S. 33, 42 (2018).

Under the narrow and rare circumstances of this case—where Plaintiffs assert a cause of action in a U.S. court under foreign law for torts that occurred in that foreign country—there is no discretion to apply U.S. law. *See Cuba R.R. v. Crosby*, 222 U.S. 473, 478 (1912); *see also Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 119 (2013). Plaintiffs misunderstand that key point. They cite decisions from this Court for the proposition that a district court can apply domestic law "if parties fail to adequately prove foreign law." Opp.15-17. But, *none* of those cases involve plaintiffs seeking to recover for foreign torts under a foreign cause of action.

2

*Crosby* and *Kiobel* apply here instead. As the Supreme Court explained in *Kiobel*, a federal court cannot apply U.S. law to a foreign tort cause of action. 569 U.S. at 109 (citing *Crosby*, 222 U.S. at 479). Rather, "the only justification" for allowing a party to recover under a foreign tort cause of action in a U.S. federal court is a "well-founded belief that it was a cause of action in that [country]." *Id*. (quoting *Crosby*, 222 U.S. at 479). In *Crosby*, the Court explained that "the liabilities of parties to each other are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it." 222 U.S. at 478. As the Court put it, the foreign law "alone" "is the foundation of their rights" and as such, the law "is part of the plaintiff's case" who "must allege and prove it." *Id*. at 478-479. And a court reviewing such a claim may not simply "administer its notion of justice but [must] enforce an obligation that has been created by a different law." *Id*. at 478.

Put simply, Plaintiffs are fundamentally incorrect that a federal court may resort to U.S. law to "gap-fill" a plaintiff's foreign-law tort cause of action. The element of causation was an element of Plaintiffs' claim, not a collateral issue that could, under limited circumstances, be "gap-filled" with domestic law. *See id*. If anything, when the elements of a foreign-law cause of action cannot be ascertained, the claim should be dismissed—not replaced with U.S. law. *See Crosby*, 222 U.S. at 479; *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1473 (3d Cir. 1988)

(affirming dismissal because "[a]s the party seeking to recover under a foreign nation's cause of action, [plaintiff] bore the burden of proving its entitlement to that relief." (citing *Crosby*, 222 U.S. at 479)); *Adams v. Arabian Am. Oil Co.*, 8 F.3d 25, 1993 WL 384568, at *3 (9th Cir. 1993).

None of Plaintiffs' cited cases say otherwise. For example, both *Mutual Service Ins. v. Frit Industries, Inc.*, 358 F.3d 1312, 1321-22 (11th Cir. 2004) and *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1165 (11th Cir. 2009) are inapposite because they were contract cases where the parties *disputed* whether foreign law or U.S. law governed interpretation of a contract. Unlike here, where foreign law forms "the foundation of [Plaintiffs'] rights" and "is part of plaintiff['s] case," there, the foreign-law issue was not a question related to the "foundation" of the parties' rights and liabilities nor a "part of plaintiff's case." *See id*; *Crosby*, 222 U.S. at 478-79. In *Cavic v. Grand Bahama Development Co.*, neither party ever argued for the application of foreign law, so it was not applied. 701 F.2d 879, 882 (11th Cir. 1983).

Plaintiffs next cite cases for the proposition that "under such circumstances" like *Cavic* "it is permissible to conclude that the foreign law is the same as the forum law." Opp.17. *Freedman* and *Ferrostaal* are inapplicable because the foreign-law questions there did not provide the basis of a claim. *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1136 (11th Cir. 2020); *Ferrostaal, Inc. v. M/V Sea Phoenix*,

4

447 F.3d 212, 218 (3d Cir. 2006). *Freedman* further undermines Plaintiffs' position because there, this Court and the district court thoroughly examined and discussed applicable decisions of the foreign appellate courts and applied foreign law. *Freedman*, 963 F.3d at 1136. Here, the court ignored the Colombian cases presented by the parties and instead turned, *sua sponte*, to its version of domestic law. AOB28-31.

Plaintiffs also mischaracterize *Mamani v. Sánchez Bustamante*, where this Court simply outlined several available options to determine foreign law under Rule 44.1. 968 F.3d 1216, 1246 (11th Cir. 2020). Nothing in *Mamani* endorses Plaintiffs' misguided view that a court can jettison the foreign law under which the Plaintiffs' pleaded their claim and instead apply domestic law.

Additionally, Plaintiffs' cases largely pre-date *Animal Science*, where the Supreme Court emphasized that Rule 44.1 fundamentally changed the determination of foreign law from a question of fact to one of law. 585 U.S. at 42. As a result, courts must apply the same rigor and methods to determine foreign law as they would domestic law. *Id*. Following *Animal Science*, this Court has modeled that thorough approach. *See Garcia v. Chiquita Brands International, Inc.*, 48 F.4th 1202, 1209-22 (11th Cir. 2022); *Palencia v. Perez*, 921 F.3d 1333, 1339-42 (11th Cir. 2019). Other circuits have done the same. *See* AOB28-31; *see also Beijing Abace Biology Co. v. Zhang*, 122 F.4th 448, 453 (1st Cir. 2024) (citing *Animal*

*Science* and stating a court "must regard the matter of foreign country law as purely a 'question of law'" and answer the question "through its own research and analysis"). There would be no reason for Rule 44.1 if a court could simply proclaim the parties' declarations insufficient and forego the foreign-law inquiry altogether—especially where Chiquita provided additional declarations responding to the court's concerns. AOB19-20.[1]

Plaintiffs concede (Opp.14) that the court applied Colombian law to other elements of their Colombian-law claim, but not to the causation element. The court thus created a Frankenstein claim—one-part foreign law and one-part federal common law. This Court has rejected the application of different jurisdictions' laws to different elements of the same claim where it "fragment[s] issues related to a common purpose" and "legitimizes a smorgasbord approach which inures only to the benefit of the party picking and choosing." *See Schippers v. United States*, 715 F.3d 879, 888 & n.9 (11th Cir. 2013) (citations omitted). It also "risks subjecting litigants to a law of the case that is not the law of any jurisdiction but is instead an eclectic blend of various sovereigns' laws crafted by a judge into a bespoke tort law fitted for a particular case." *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045,

---

[1] Plaintiffs incorrectly claim that Chiquita's submissions were filed on the "eve of trial." Opp.18. *Both parties* filed supplemental submissions *two months* before trial in support of their proposed jury instructions. Vol25App5565-5578; Vol25App5692-5735. By its own candid admission, the court did not "focus" on them. Vol57App13134:14-13135:7.

1051 n.28 (Del. 2015). Simply put, "a party should not be allowed to put together half a donkey and half a camel, and then ride to victory on the synthetic hybrid." *Id.* (citation omitted). This Court should reverse.

### B.    Colombian Law Requires But-For Causation

Plaintiffs cannot justify the court's refusal to apply Colombian law. Instead, Plaintiffs and *Amici* contend that Colombian courts apply "a variety of causation standards" and that but-for causation is not required. Opp.28. Not so.

The 2021 Colombian Supreme Court decision Plaintiffs rely on (Opp.30) adopted the rule of "adequate causation" which is based on a theory of *conditio sine qua non*, meaning that "conduct is the cause of a victim's damage if, in the absence of such activity, the damage would not have occurred." Pls' Addendum at 17-19, 19 n.8; *id.* at 18, 24 ("*sine qua non* forms the basis of the theory of adequate causation"). Contrary to Plaintiffs' arguments (Opp.29-30), the Colombian Supreme Court also made clear that this requirement of *conditio sine qua non* applies where there are multiple causes of a harm. *Id.* at 24 (multi-causality requires first identifying "the conditions *sine qua non* in the production of the damage").

Where concurrent causes are alleged, each defendant's conduct must be sufficient *standing alone* to cause plaintiff's harm. *See id.* at 19 n.8 ("For concurrent causes…'if each of them would have caused the damage *on its own* at the same time...") (emphasis added); *id.* ("For alternative causes, *when each one is sufficient*

*by itself* to cause the harm…") (emphasis added). Plaintiffs' expert, Arrubla, explained concurrent causation the same way. Vol17App3852 (a cause is concurrent when "even without the effects of the other person's actions, the result would have happened anyway") (quoting Vol17App3908-09). And the treatise relied upon by Plaintiffs' experts and *amici* concurs. *See* Tamayo Jaramillo, Tratado De Responsabilidad Civil (2d ed. 2007) ("Tamayo"), excerpt attached as Appellant's Addendum, at 384-85. It is undisputed that Chiquita's "aid" standing alone could not have caused Plaintiffs' harm. AOB32-33; Vol16App3557-3559; Vol25App5696-5697, 5700-5704.

Plaintiffs quote Arrubla's personal view that the causation standard should be relaxed in the context of "paramilitary violence," (Opp.29) but he cited no authority for his position. *See* Vol17App3909 ¶61. To the extent Arrubla is drawing an analogy from a hypothetical in Tamayo's treatise (Vol17App3909 ¶60), Tamayo makes clear he is discussing concurrent causation and that each cause must independently be adequate. Tamayo, at 385. Simply put, but-for causation is required. This was clearly presented to the court at summary judgment and at trial in the extensive Rule 44.1 submissions. AOB31-35.

### C.    In Any Event, Florida Law Requires But-For Causation

Plaintiffs claim that the court "reasonably drew" a causation standard from Florida law that requires "substantial assistance, not but-for causation." Opp.20. Yet

8

as this Court recently held, substantial assistance demands "that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Otto Candies LLC v. Citigroup Inc.*, 137 F.4th 1158, 1183 (11th Cir. 2025) (applying Florida law); *see also id.* at 1185 ("the fraud could not have existed without [defendant's] assistance"). "[T]o constitute proximate cause" it must be said "that *but for* the negligent act or omission the injury would not have occurred." *Stahl v. Metro. Dade Cnty.*, 438 So.2d 14, 17 (Fla.3d DCA 1983) (citing *Seaboard Air Line Ry. v. Mullin,* 70 So. 467, 470 (Fla. 1915)). Plaintiffs cite *Stahl* (albeit incompletely) but ignore *Otto Candies*, even though it was decided after Chiquita's Opening Brief but well before Plaintiffs filed their brief.

Regardless, Plaintiffs' other cases discussing substantial assistance confirm the point. In *Logan v. Morgan, Lewis & Bockius LLP*, the fraudulent scheme "never would have been able to continue" without the defendant's "crucial" assistance. 350 So.3d 404, 411 (Fla.2d DCA 2022). And the Restatement (Second) of Torts § 876 (1979) confirms that the substantial assistance causation standard is the same as "legal causation when there has been negligence[.]" *See id.* at cmt. d. Thus, even if the court did not err by importing a U.S. "substantial assistance" standard (it did, AOB37-38), its instructions did not comport with Florida's "substantial assistance" standard because it, too, requires a showing of but-for cause.

Plaintiffs also argue that this is a "concurrent cause" case, so the "substantial factor" test applies, not but-for causation. Opp.20-26 (citing *Stahl*, 438 So.2d at 17). Again, however, concurring causes are independent causes that "alone could have produced…the plaintiff's injury." *Stahl*, 438 So.2d at 18. Plaintiffs omit that language from *Stahl*, but it is dispositive here. Opp.20-26. Not only do concurrent-cause cases require a cause-in-fact but, as explained *supra* at 8, this is not a concurrent-cause case because Chiquita's payments *alone* did not and could not have caused any deaths. *See Riley v. Tesla, Inc.*, No. 22-12515, 2025 WL 881387, at *9 (11th Cir. Mar. 21, 2025) ("But the substantial factor test does not apply here. Florida courts apply the substantial factor test only where there are concurring causes of an injury. Concurring causes are independent causes that alone could have produced the plaintiff's injury." (citing *Stahl*, 438 So.2d at 18)).[2]

Ignoring *Riley*, Plaintiffs insist that Chiquita's "aid" should not be considered alone because, by analogy, "the sale of a rifle alone cannot cause harm[.]" Opp.26 n.6 (citing *K-Mart Enters. of Fla., Inc. v. Keller*, 439 So.2d 283, 285-87 (Fla.3d DCA 1983)). But in *K-Mart* the "injury took place as a direct result of K-Mart's [illegal] selling [of] a 'lethal weapon.'" *Id.* at 287. Stated differently, in the absence of the illegal sale by K-Mart, the harm would not have occurred. *Id.* The same cannot be

---

[2] Plaintiffs invite this Court (Opp.24) to ignore long-standing Florida pattern jury instructions. But Florida courts routinely rely on the instructions. *See, e.g.*, *O'Donnell v. W.F. Taylor Co.*, 292 So.3d 785, 789-90 (Fla.4th DCA 2020).

said for Chiquita's alleged aid, which Plaintiffs cannot and do not even attempt to link to any decedent's death.

Plaintiffs pivot, arguing that this could also be an "intervening cause" case. Opp.21-22. But the intervening-cause doctrine is a *defense* that comes into play only after plaintiffs establish a cause-in-fact. *See Gathercrest, Ltd. State Bank of India v. First Am. Bank & Tr.*, 805 F.2d 995, 997 (11th Cir. 1986); *see also* 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 3.6 (2024-25 ed.) ("Even though it is determined that a defendant's negligent conduct has *in fact caused the plaintiff's injury*, Florida law recognizes that he may not be liable if an act that is unforeseeable to him and independent of his negligence intervenes to also cause the injury.") (emphasis added).

Plaintiffs' final pivot is to argue that merely showing that a defendant increased the risk of harm is sufficient to prove causation. Opp.21, 26 n.7 (citing *Cohen v. Philip Morris USA, Inc.*, 203 So.3d 942, 950 (Fla.4th DCA 2016)). As that court later clarified, *Cohen* is limited to its facts and did not dispense with but-for causation. *See O'Donnell*, 292 So.3d at 789-90. In *O'Donnell*, each defendant's benzene-containing product "contributed only a small fraction of the [plaintiff]'s lifetime exposure, far below the threshold amount likely to have caused the husband's illness." *Id*. at 788-90. The court rejected plaintiff's argument that a substantial factor test applied and affirmed judgment for defendants. *Id*. at 787 ("In

11

Florida, substantiality is not an independent test for legal causation" and "is no substitute" for "'but for' causation"). So too here, judgment is warranted because Plaintiffs cannot prove that Chiquita's payments—amounting to 0.04% of the AUC's revenue—were the but-for cause of any decedent's death. *See* AOB8.

*O'Donnell* also dispenses with Plaintiffs' notion (Opp.23) that the court justifiably relied on *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008), which was not interpreting Florida law. The sole Florida case cited in *Boim*, 549 F.3d at 696 reinforces that concurrent causation requires that each cause "operating alone, would have been sufficient to cause the identical result." *See Sanders v. American Body Armor & Equip. Inc.*, 652 So.2d 883, 884 (Fla.1st DCA 1995). *Boim*'s conceptual framework is not Florida law. *See O'Donnell*, 292 So.3d at 789-90.

Plaintiffs claim that Chiquita "waived" or "forfeited" the argument that but-for causation applies because Chiquita's proposed Florida instruction—as a fallback position to Colombian law—did not expressly articulate "but-for" causation. *See* Opp.27-28. Not so. Chiquita's alternative instructions required Plaintiffs to prove that Chiquita "provided substantial assistance to the AUC *in killing each Plaintiff's relative*," as required under Florida law. Vol38App8748 (emphasis added); *see Otto Candies*, 137 F.4th at 1177-85 (requiring that defendant's assistance be a proximate cause of the *harm that injured plaintiff*). Chiquita also proposed that the jury consider

the relative size of Chiquita's payments to the AUC's total revenue in evaluating whether "Chiquita's payments caused the at-issue deaths." Vol39App8775 & n.51 (citing *Dover v. R.J. Reynolds Tobacco Co.*, 2014 WL 4723116, at *3 (M.D. Fla. Sept. 22, 2014) (size of defendant's contribution relative to others is relevant to proximate cause)). As discussed above, "substantial assistance" requires Plaintiffs to prove but-for causation. *Supra* at 9.

Indeed, Plaintiffs objected to Chiquita's alternative instructions because they "implie[d] that 'but for' causation is required[.]" Vol38App8748; Vol39App8775 (objecting that the court "has already rejected 'but for' causation"). Ultimately, the court refused to adopt Chiquita's alternative instructions and, contrary to Florida law, required that Chiquita's assistance merely "create a foreseeable risk of harm to any Plaintiff's decedent[.]" *See* Vol61App13868; AOB39-40. The court also expressly instructed that Chiquita's payments need not be "necessary" in causing any decedent's death and that but-for causation was *not* required—to which Chiquita objected on the grounds that these instructions "fail[ed] to accurately reflect the law on causation under Florida [law]." Vol24App5508; Vol61App13868.

Plaintiffs' "waiver" cases (Opp.28) are plainly inapposite. Chiquita expressly objected to the court's instructions, unlike the defendants in *Anderson* and *Moore*. *See Anderson v. Brown Indus.*, 614 F. App'x 415, 418-19 (11th Cir. 2015); *United States v. Moore*, 525 F.3d 1033, 1048 (11th Cir. 2008). And Chiquita did not take the

"opposite" position below like the defendant in *Osheroff. See United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 809 (11th Cir. 2015). Plaintiffs claim that Chiquita's counsel asserted that "U.S. common law" "is markedly different than" Colombia's but-for causation standard, suggesting counsel was referring to Florida law. Opp.27-28. But Counsel's reference was clearly to "federal common-law," not Florida law. Vol58App13155:6-10.

Chiquita's position on but-for causation has been consistent throughout the history of this case, including trial. Chiquita is permitted to expand upon its arguments and even make *new* arguments on appeal consistent with its position below. *See VFS Leasing Co. v. Markel Ins.*, 120 F.4th 745, 749-50 (11th Cir. 2024).

And in any event, this Court may always consider a "plain error in the instructions," which clearly exists here. *See Scott v. United States Treasury Dep't*, 776 F. App'x 612, 615 (11th Cir. 2019) (reversing jury verdict under plain error review for unobjected-to jury instructions).

### D.    Plaintiffs Concede that Federal Common Law Cannot Apply

Plaintiffs concede that the court could only look to Colombian or Florida law—not federal common law. Opp.30. But at the charging conference, the court stated it was applying "[f]ederal common-law in connection with aiding and abetting." Vol58App13159:19; Vol58App13158:18-13160:1. Plaintiffs assured the

14

court this was "perfectly appropriate." Vol58App13167:11-20. Now, they admit it was not.

The decision to supplant Colombia and Florida law with federal common law was legal error. *See Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013) ("[T]o decide diversity cases on the basis of common law created by federal judges [is] an unconstitutional usurpation of state authority."); *Yousuf v. Cohlmia,* 741 F.3d 31, 47 (10th Cir. 2014) ("[T]he task of a federal court sitting in diversity is not to reach our own judgment regarding the substance of the common law, but simply to ascertain and apply the state law."). This Court should reverse.

### E.    The District Court's Causation Standard Flouts U.S. Supreme Court Precedent

When the court improperly applied federal common law, it misstated that law. Plaintiffs claim that the court applied "the same standard as *Twitter*" because the court invoked the words "knowing substantial assistance." Opp.31. But the court refused to define that standard as Chiquita proposed and *Twitter* mandates. AOB40-41. By no means were the court's erroneous instructions a mere "isolated clause" that is "inaccurate, ambiguous or incomplete," as Plaintiffs suggest. Opp.32.

The court instructed that Plaintiffs need only prove that Chiquita "[understood] the mission of the organization," and that "Chiquita's assistance substantially increase[d] the risk of terrorists acts by the AUC and the probability

15

that the Plaintiff's relative would be a victim." Vol61App13867. Those instructions abandoned *Twitter*'s core conceptual framework.

First, the instructions absolved Plaintiffs from proving that Chiquita engaged in "conscious, voluntary, and culpable participation in [the AUC's] wrongdoing . . . 'as something that [it] wished to bring about,' and sought 'by [its] actions to make succeed.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493, 498 (2023) (citation omitted); *Smith & Wesson Brands v. Estados Unidos Mexicanos*, 145 S.Ct. 1556, 1565 (2025); AOB43-44. Plaintiffs contend that this intent requirement is "unrelated to causation." Opp.33. But *Twitter* mandates that knowledge and substantial assistance are inseparable "part[s] of a single inquiry designed to capture conscious and culpable conduct"—the essence of an aiding-and-abetting claim. *Twitter*, 598 U.S. at 504. And Plaintiffs themselves proposed the definition of "knowing" as part of causation that the court adopted. Vol24App5499.

The court's failure to give the required "knowing" instruction was not cured by the duress instruction. *Contra* Opp.43-44. It was Plaintiffs' burden to prove that Chiquita voluntarily and intentionally participated in the AUC's acts of violence. *Twitter*, 598 U.S. at 505. Thus, it was error for the court to shift that burden to Chiquita. The three-part duress defense (Vol61App13874) does not address whether conduct was voluntary and intentional, but whether voluntary and intentional

16

conduct is excusable. It is a matter "extraneous to the plaintiff's *prima facie* case." *In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

Second, the court relieved Plaintiffs of their obligation to prove a nexus to each decedent's death. *See Twitter*, 598 U.S. at 494; *Smith & Wesson*, 145 S.Ct. at 1566. Plaintiffs claim that *Twitter* "rejected" a direct nexus requirement. Opp.32. Not so. The Supreme Court made clear that aiding and abetting is "a rule of secondary liability for *specific* wrongful acts." *Smith & Wesson*, 145 S.Ct. at 1566 (quoting *Twitter*, 598 U.S. at 494). Both *Twitter* and *Smith & Wesson* establish that liability without a strict nexus between the alleged assistance and the injury is the rare exception, not the rule. *Twitter*, 598 U.S. at 496 ("At this point, aiding-and-abetting liability begins to blur with conspiracy liability, which typically holds co-conspirators liable for all reasonably foreseeable acts."); *Smith & Wesson*, 145 S.Ct. at 1566. This narrow exception to the rule—where a defendant may be held liable for aiding-and-abetting "a broad category of misconduct"—requires the defendant's participation to be so "pervasive, systemic and culpable" that he could be said to aid and abet every single wrongful act of the enterprise. *Id*. That exception cannot help Plaintiffs here because the court did not require Plaintiffs to prove its requirements, and there are no facts to suggest they could do so. AOB40-45.

Nor does *Direct Sales Co. v. United States*, 319 U.S. 703 (1943) help Plaintiffs. *Contra* Opp.23. There, the defendant actively stimulated and encouraged

17

the criminal conduct and "join[ed] both mind and hand with [the criminal] to make its accomplishment possible." *Direct Sales*, 319 U.S. at 713. And there was a direct nexus between the assistance (supplied morphine) and the tort (illegal resale of the morphine). *Id.* at 707-08. Neither are present here.

### F.    Chiquita Is Entitled to Judgment

Plaintiffs contend that this Court can only review a summary judgment decision post-trial on "issues that can be resolved without reference to any disputed facts." Opp.35-36. That is the case here. Going into trial, Plaintiffs' expert conceded it would be "impossible" to demonstrate that Chiquita's payments were a but-for cause of any decedent's killing. Vol25App5574 ¶27.

Plaintiffs now backpedal, claiming their expert was "not opining on the evidentiary record." Opp.35-36. But he reviewed the summary judgment opinion (Vol25App5575 ¶29) that detailed the same evidence Plaintiffs rely upon now. Vol19App4375 (discussing "seed" money for the AUC's growth and "valuable port access"). Thus, Plaintiffs' expert, armed with the same evidence Plaintiffs claim now would create a dispute of fact, conceded the opposite—that demonstrating but-for causation would be "impossible." Judgment is warranted.

## II.    The District Court's Unduly Prejudicial Evidentiary Errors Warrant Reversal

### A.    The District Court Improperly Excluded Witness Payment Evidence

Plaintiffs do not even attempt to rebut the extensive witness payment scheme. AOB12-18, 48-53. Plaintiffs argue that the court's exclusion of this highly probative evidence was within its "trial-management discretion" under Rule 403 and that the evidence would not have changed the verdict. Opp.37-39. Both arguments fail.

First, Chiquita was not required to demonstrate a "compelling need" to call counsel (Opp.41); to the contrary, there must be a compelling reason to *exclude* evidence under Rule 403. AOB49. Plaintiffs cite inapposite criminal cases (Opp.41) regarding the "compelling need" to call a *prosecutor*, none of which involve a prosecutor offering payment to a witness. But even if that standard applied, it was met here because counsel injected themselves as fact witnesses with unique information relevant to Chiquita's defense. *Doubleday v. Ruh*, 149 F.R.D. 601, 613 (E.D. Cal. 1993) (attorney may be examined like any other witness where attorney's conduct is relevant to a claim or defense); *Dewey v. Bechthold*, 2019 WL 5429373, at *7 (E.D. Wis. Oct. 23, 2019) ("Attorneys who inject themselves as fact witnesses in the proceedings cannot claim harassment and undue burden[.]").[3]

---

[3] Plaintiffs argue that Chiquita "opposed" an evidentiary hearing (Opp.43), but no hearing was needed. Chiquita proffered sufficient evidence to call counsel. AOB50. Plaintiffs only sought an unfair preview of Chiquita's cross-examination.

Further, it was an abuse of discretion to summarily exclude all documentary evidence of the scheme without articulating an evidentiary basis. *See* Vol57App12926:5-12931:13.[4] Plaintiffs now argue the documents are hearsay, but counsel's communications, made while acting as Plaintiffs' agents, were party admissions. Fed. R. Evid. 801(d)(2)(D); *contra* Opp.44. And Wichmann's sworn court statements were made while he was Plaintiffs' agent "on a matter within the scope of that relationship" as they pertain to bribed witnesses that his clients relied upon. *See id.*; Vol57App12926:5-12931:13. The court documents containing these admissions also satisfy the public records and residual exceptions to hearsay. *See Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 291-92 (5th Cir. 2002) ("certified court records are public records, thereby falling within the public records exception to the hearsay rule"); *In re Mines*, 630 B.R. 107, 116 (Bankr. E.D.N.Y. 2021) (sworn pleadings admitted under residual exception).

Moreover, the improper exclusion was not harmless. The minimal portions of Hasbún's deposition testimony read at trial were cryptic, did not reveal the entire scheme, and did not show that Mangones (AOB49-52) was also tainted. *See*

---

[4] It is incorrect that Chiquita did not identify rulings excluding specific documents (Opp.43). *See* AOB50-52. Plaintiffs also wrongly state that Chiquita proffered the documentary evidence post-trial. Opp.43. The filing they reference was a "public" version of the evidence Chiquita proffered before and during trial. *See* Vol59App13425-13544; Vol35App7921-7977; Vol57App12926:5-12931:13.

Vol62App14134-14135(75:22-79:09). Moreover, Chiquita was unable to confront Hasbún with the majority of the witness tampering evidence at his 2019 deposition because Collingsworth produced it *after* discovery in 2020. And while Chiquita touched the fringes of this topic with Plaintiffs' expert, Chiquita was prevented from confronting him with the details. Vol46App10452:23-24 (court: "we're not getting into it."). The court excluded that evidence as hearsay (Opp.40), but Chiquita attempted to use Hasbún's deposition testimony that was admitted at trial, which was not hearsay.

Plaintiffs claim Chiquita did not ask its expert about witness payments but, at Plaintiffs' urging, his testimony was strictly limited to Justice and Peace *generally*. Vol55App12569:21-12573:8. Chiquita sought to prove that specific "confessions" were tampered with, so *Amici*'s brief regarding the legitimacy of the Justice and Peace process is thus largely undermined by Chiquita's evidence.

The bits of evidence the court admitted did not cure the prejudice to Chiquita. Even where some evidence is admitted, a new trial is warranted where exclusion of the remaining evidence "wounded [a party's] ability to present an accurate picture" on a critical issue. *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1071-72 (11th Cir. 2014). Presenting the full scope of counsel's tampering was critical

because Plaintiffs relied on the tainted "confessions" to prevail at trial. AOB12.[5]

Indeed, the confessions were the only direct evidence of AUC involvement in

Conrad & Scherer's case, and they elicited testimony through their client about the

very proceeding with which they tampered. *See* Vol45App10307:19-10308:16. This

Court should reverse.

### B.    Admission of Unsworn Testimony Warrants a New Trial

Plaintiffs concede that, before testifying, Nuñez and Bello were not subjected

to penalties for perjury under Colombian law, and argue that "[n]othing in Rule 603

requires an oath to threaten penalties at all." Opp.46. Binding precedent says the

opposite: "Rule 603 is clear…No witness has the right to testify but on penalty of

perjury" and any contention otherwise is "frivolous." *United States v. Fowler*, 605

F.2d 181, 185 (5th Cir. 1979).

Plaintiffs alternatively point to Nuñez and Bello's post-facto affidavits

(Opp.46), but per Rule 603, a proper oath is required "before testifying" to ensure

truthfulness under questioning—not afterwards when a deponent who already lied

is incentivized to ratify his statements. Fed. R. Evid. 603. Nor did Chiquita

"originally propose[]" the oaths for Nuñez and Bello. Chiquita proposed an oath for

---

[5] That the jury found for Chiquita against Plaintiff Durango does not mean the confessions were non-dispositive for the other cases. It is likely that the jury stopped considering the evidence for this case when reminded in closing argument that the decedent died in a bar fight unconnected to the AUC, before Chiquita's AUC payments even started. Vol60App13749:15-13750:10.

certain Plaintiffs who *were* subject to the court's jurisdiction, which contained an appropriate sanction. Vol37App8346. Chiquita agreed to this oath only for Plaintiffs or their family members. *See id*; *see also* Vol37App8331(5:14-22); Vol40App9133:9-17.

Admission of Nuñez and Bello's unsworn, sensational testimony was not harmless because it tainted the jury. AOB55-57. And Chiquita was prevented from rebutting that testimony. For example, the court did not permit Chiquita to show that Nuñez was biased against the two Chiquita employees he implicated as accomplices to AUC kidnappings because they led the investigation resulting in his termination. *Compare* Vol61App14003(37:16-37:20) *with* Vol52App11826-11827, 11875.

The court also excluded Hasbún's *Dole* deposition testimony that directly rebutted Bello's uncorroborated testimony. AOB57. Contrary to Bello's story, Hasbún testified that Chiquita was *not* complicit in AUC arms smuggling, and that he had to *threaten* the Banadex employee to ensure cooperation. AOB57. Plaintiffs claim (Opp.47-48) that the court was right to exclude that testimony as hearsay but "when the impeachment tends to show the witness's untruthfulness, it is not hearsay." *Bratt v. Genovese*, 782 F. App'x 959, 967 (11th Cir. 2019). Additionally, Hasbún was an unavailable witness, and his testimony met hearsay exceptions. *See* Fed. R. Evid. 804(b)(1) (former testimony), 804(b)(3) (testimony against penal interest); AOB48.

### III. The District Court Erred by Submitting the Hazardous Activity Claim to the Jury and Plaintiffs' Request to Revive the Claim Is Baseless

Plaintiffs cite *Therrell v. Georgia Marble Holdings* for the proposition that judges may reserve ruling on Rule 50 motions that are based on sufficiency of the evidence. Opp.53 (citing 960 F.2d 1555, 1569 (11th Cir. 1992)). Here, the Rule 50 motion presented a *question of law*, not sufficiency of the evidence, and it was error to submit that question to the jury. *See Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1064 (11th Cir. 1996). Plaintiffs' reliance on *United States v. Roy* is similarly misplaced. 855 F.3d 1133, 1186 (11th Cir. 2017). The issue here is not that the jury failed to follow the court's instructions, rather the jury was given legally-erroneous instructions it should have never considered. As *Hamm v. Powell* explains, a court should not submit a legally-deficient claim to the jury where it can lead the jury to an incorrect decision on a separate claim. 874 F.2d 766, 770 (11th Cir. 1989); AOB47-48. That is what happened here. Allowing the jury to deliberate on whether Chiquita increased "the risk to members of the community" by engaging in a hazardous activity, inevitably led the jury to conclude that Chiquita "increased the risk of harm" to the Plaintiffs, who were members of that same community.

Deflecting from this error, Plaintiffs ask this Court to revive this deficient claim. The hazardous activity finding is not an alternative ground for affirmance because this Court would have to *reverse* the court's dismissal of that claim. Such relief would enlarge Plaintiffs' rights and lessen Chiquita's rights—requiring a cross-

24

appeal. *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 479 (1999) (absent cross-appeal, appellee "may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary"). Indeed, asking this Court to reverse a ruling on a separate claim, in the alternative to "leav[ing] the district court's ruling as is," is a "quintessential request" requiring a cross-appeal. *Worthen v. Fidelity Nat'l Prop. & Cas. Ins.*, 463 F. App'x 422, 428 (5th Cir. 2012); *Haitian Refugee Ctr., Inc. v. Baker*, 949 F.2d 1109, 1111 (11th Cir. 1991) (rejecting request to uphold injunction on separate claim for failure to cross-appeal).

Regardless, the court properly dismissed the hazardous activity claim because what is "hazardous" is a "legal" question under Colombian law. Vol65App14907. The Colombian Supreme Court case Plaintiffs quote states that what is "hazardous" is ultimately a "legal characterization." Vol65App14907.

Further, the court correctly found that "payment of money by its nature is not, as a matter of law, a hazardous activity," under applicable Colombian Supreme Court authority. Vol65App14906-14907; *see also* Vol39App8818 ¶¶13-14. Nor did the court ignore non-financial activity like "assisting in the delivery of large quantities of weapons and ammunition." *Contra* Opp.55. The court considered that argument but correctly determined "the only 'activity' squarely tied to Defendant" was its payments to the AUC. Vol65App14906.

Finally, the claim fails for the same reason the negligence claim fails—the court's refusal to apply but-for causation. Vol16App3558; Vol39App8782; Vol39App8819-20. Plaintiffs claim that causation can be "presumed" for hazardous activity (Opp.57), but the case they cite refers to a presumption of fault, not causation. Vol1SuppAppx165-169. Plaintiffs' other cited case demonstrates that but-for causation applies to this claim. Vol1SuppApp249-50; Vol2SuppApp254. Therefore, even if the court incorrectly decided whether Chiquita's conduct was hazardous as a matter of law, this Court cannot affirm on that basis because the causation instruction on the hazardous activity claim was still incorrect.

## IV. At Minimum, Damages Should Be Reduced

The standard of review is de novo (*contra* Opp.49) because Chiquita moved for reduction of damages as a matter of law. *See Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1330-31 (11th Cir. 1999).

Plaintiffs are also wrong to argue that Colombian Supreme Court opinions limiting noneconomic damages are not "law" in a civil law country. In *Garcia*, this Court found that Plaintiffs did not identify a "civil law rule in Colombia (*or a decision from Colombia's highest court*)" on the applicable issue. 48 F.4th at 1212 (emphasis added). Here, Colombia's highest court *has* held that a judgment awarding noneconomic damages can "certainly not" exceed the limits, and its holding was not limited to the amount-in-controversy question as Plaintiffs suggest

(Opp.50). Vol63App14511-14514.

When Plaintiffs successfully opposed *forum non conveniens* dismissal, they represented to the court that noneconomic damages are "restricted to some maximum limits set by the high courts." Vol14App3038 ¶42; Vol13App2980 n.24. This concession is not "out of context" or "awkwardly worded" (Opp.51), and it estops Plaintiffs' new position now. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

Plaintiffs also claim that "two dozen cases state that there are no caps" and that judges award damages "based on the facts." Opp.50. None of those cases "state that there are no caps." *Id.* Indeed, the Colombian Supreme Court has held that judges should award damages based on the facts but must abide by the "maximum limits [that]…serve as a guide…*within which* it is admissible for [judges] to exercise their prudent discretion." *See* Vol63App14434 (emphasis added). Plaintiffs claim their expert could not find a case applying the caps, yet they attach a case that applied the caps. Vol1SuppAppx214 (applying COP\$72,000,000 cap to moral damages); Vol64App14705-06. Moreover, every case cited by Plaintiffs awarded damages within the caps. *See* Vol64App14707-14709 ¶¶34-37.

Plaintiffs next rely on this Court's *Piamba* and *Foster* decisions to argue the caps cannot apply to American defendants. Opp.51-52. But those cases only addressed defendant's domicile in the context of choosing *which* law applies to

27

compensatory damages. AOB58-59. Here, the court ruled, and Plaintiffs agreed, that the "Colombian scheme" applied to compensatory damages. Vol58App13175:8-9. Given that, binding precedent requires applying the caps regardless of defendant's domicile. *See McDaniel v. Petroleum Helicopters, Inc.*, 455 F.2d 137, 138 (5th Cir. 1972) (determining Colombian law applied and applying the caps to non-Colombian defendant). It was improper here to apply Colombian compensatory damages law without its caps. *See Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1064 (10th Cir. 1992) ("a party who seeks the benefit of one aspect of a state's compensatory damages law must accept the entire package").

Finally, Plaintiffs claim that applying the caps advances no policy interests, but the caps advance the essential policy interest of ensuring equal treatment of Colombian plaintiffs. AOB59. Allowing Plaintiffs to receive 40-50x more than similarly-situated Colombians not only defeats that purpose but also flouts Supreme Court precedent. *Lauritzen v. Larsen*, 345 U.S. 571, 591 (1953) (cases should "be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum").

## Conclusion

This Court should vacate and enter judgment for Chiquita or, alternatively, remand for a new trial. At minimum, this Court should reduce damages.

Dated:       July 31, 2025                    Respectfully submitted,

                                              */s/ Michael L. Cioffi*
                                              Michael L. Cioffi
                                              BLANK ROME LLP
                                              1700 PNC Center
                                              201 East Fifth Street
                                              Cincinnati, OH 45202
                                              (513) 362-8701/04
                                              michael.cioffi@blankrome.com

                                              Frank A. Dante
                                              Melissa F. Murphy
                                              Michael A. Stoolman
                                              Serena S. Gopal
                                              BLANK ROME LLP
                                              One Logan Square
                                              130 N. 18th Street
                                              Philadelphia, PA 19103
                                              (215) 569-5645/5334
                                              frank.dante@blankrome.com
                                              melissa.murphy@blankrome.com
                                              michael.stoolman@blankrome.com
                                              serena.gopal@blankrome.com

                                              *Counsel for Defendant–Appellant*
                                              *Chiquita Brands International, Inc.*

29

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,489 words according to a word count using Microsoft Word, the word-processing software used to prepare the document. Pursuant to Fed. R. App. P. 27(d)(1)(E), I certify that this document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface, 14-point Times New Roman font.

Dated:     July 31, 2025                    */s/ Michael L. Cioffi*
                                            Michael L. Cioffi

**Certificate of Service**

I hereby certify that I electronically filed this document with the Clerk of the Court using the ECF system on July 31, 2025 which will automatically generate and serve by e-mail a Notice of Docket Activity on Attorney Filers under Fed. R. App. P. 25(c)(2).

*/s/ Michael L. Cioffi*
Michael L. Cioffi